[Crim. No. 2199.   Second Appellate District, Division Two.—August 23, 1932.]

THE PEOPLE, Respondent, v. H. F. HOPKINS et al., Defendants; FRANK DIGIOVANNI, Appellant.

W. T. Kendrick, Jr., for Appellant.

U. S. Webb, Attorney-General, and John L. Flynn, Deputy Attorney-General, for Respondent.

THOMPSON (IRA F.), J.—The defendants were accused in an information containing two counts, filed by the district attorney of Los Angeles County, with the crimes of burglary and robbery. The defendant Digiovanni was also accused of the prior conviction of a felony, which he admitted. The jury found all the defendants guilty, but Digiovanni alone prosecutes this appeal from the judgment and from the order denying his motion for a new trial.

Appellant's counsel presents two reasons why we should reverse the judgment. They are: (1) Insufficiency of the evidence to sustain the verdict, and (2) misconduct on the part of the district attorney.

There can be no dispute about the following essential facts: On the evening of September 28, 1931, between 9:15 and 10 o'clock P. M., appellant's co-defendants walked into a cider mill located at 2820 East Anaheim Street in Long Beach. The two stood on opposite sides of the employee in charge and each pressed the muzzle of a gun against his body, commanding him to get the money. He told them it was in a drawer, whereupon one of them ripped part of the drawer off and took its contents, amounting to between $2 and $3. The employee was then taken out into an alley back of the store and released. In other words, there is no question raised concerning the commission of the crime or participation in it by the defendants Hopkins and Brown. But was Digiovanni a participant? For the purpose of answering this question we now set down the testimony connecting appellant with the offenses.

About the same time that the robbery occurred one Harold Nixon observed a Nash sedan going down Anaheim Street without any lights. Approximately fifteen minutes later the witness saw the same automobile parked in front of a cafe next door to the cider mill. He also testified that after observing the owner of the shop and talking to him for a moment he started for a pool-hall a short distance away

and noticed two men on the inside of the shop and one in a car—the Nash sedan; that the sedan then moved away from the curb and drove east on Anaheim to Gladys Street, at which place it made a "U" turn, coming back west on Anaheim. The license number of the car was 8T2573. Nixon then, in company with one Baumgardner and Officer Halford, in another car, followed the Nash around as it continued its apparently aimless circling in the neighborhood of the robbery. They lost sight of it on two or three occasions, but it re-appeared. Finally they stopped the Nash on Orizaba Street between Tenth and Eleventh, at which time appellant was driving and the defendant Brown was a passenger.

Officer Halford testified that at the time of the arrest appellant was driving and that on the way to the police station the defendant Brown remarked that "he would have to get in communication with Eddie Roberts". At the station the appellant and Brown were questioned by Officer Springer. The last named testified that appellant first gave his name as Frank DeYoung and stated that he had known the defendant Brown for about six years; also that he had borrowed the Nash automobile from one Eddie Roberts, whom he had known for about two months, who was doing "a little bootlegging" and who lived at about 860 South Burlington Street, in Los Angeles. He also stated that he, the appellant, owned a model A. Ford sedan which he had left at Roberts' home. This Ford was found parked on Miramar Street, in Los Angeles, alongside of the property at 250 South Burlington—in front of which was parked a Ford automobile belonging to the defendant Brown. The evidence discloses further that the Nash sedan had been purchased by the defendant Hopkins under the name of Joe Stone. Hopkins had a key to the premises, and no person by the name of Eddie Roberts was discovered thereabouts.

We are satisfied that the evidence recited is ample justification for the jury's conclusion that appellant was a participant. First, there was the aimless driving around of the automobile in the neighborhood of the crime during the time that it was being committed. Second, the appellant was driving one of the identified defendants immediately after the commission of the crime. Third, was the untruthful statement by appellant concerning the ownership of the

Nash sedan; and fourth was the fact that the automobiles of both Brown and appellant were found parked near the house rented and occupied by the defendant Hopkins. The jury undoubtedly concluded, as was its right, that the three men had met at this house earlier in the evening, had gone to the scene of this offense in the Nash sedan and that appellant had been elected by them to do the driving and aid them in their "getaway". As was said in *People* v. *Moe*, 116 Cal. App. 740 [3 Pac. (2d) 354, 359]: "Every juror knows that to make a quick and therefore a successful 'getaway' the active perpetrators of a crime must have some person, more passive than they in his connection with the offense, occupying and in charge of the car which has brought them to the scene. This is true for the reason that the motor must be started upon the appearance of the direct perpetrators, or must be kept running during their absence. The car must be occupied by such a person to the end that it be not hemmed in by other cars if the scene be in a heavily traveled district, that no occurrence or mishap of any other character shall impair or render inefficient the instrumentality provided for a getaway, and that the occupant of the car may keep a lookout for a possible interference by the police, or for other untoward events liable to interfere with a consummation of the crime and lead to an arrest of the active participants in it, and by some concerted signal apprise them of the danger. These passive but handy participants in the commission of crime are so necessary a part of the paraphernalia of criminal machinery that they have names which distinguish them from those for whom they act as chauffeurs, being called lookouts, lookees or doormen." The jury was warranted in the present case in concluding, as they undoubtedly did, that appellant acted in the capacity so designated.

Nor do we find anything upon which to base a conclusion that the district attorney was guilty of misconduct. The witness who added to his answer that appellant had told him that "he had done time for section 146 C. V. A." was immediately cautioned by the court and the objectionable part of the answer stricken and the jury admonished. We cannot indulge the presumption that the district attorney knew that the revolver could not be identified. Perhaps he had good reason to believe otherwise. Furthermore, after

the court had ruled upon the objection the judge instructed the jury to treat the gun as though they had never seen the object. So far as the argument of the prosecution is concerned, we fail to see that it extended beyond the limits of legitimate argument.

Judgment and order affirmed.

Works, P. J., and Stephens, J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 6, 1932, and an application by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on September 22, 1932.