[Crim. No. 6448.   Second Dist., Div. One.   May 25, 1959.]

THE PEOPLE, Respondent, v. MITCHELL ROSENBERG,
Appellant.

*Assigned by Chairman of Judicial Council.

David C. Marcus for Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Philip C. Griffin, Deputy Attorney General, for Respondent.

WHITE, P. J.—The district attorney of Los Angeles County filed an information wherein defendants were charged with the crime of burglary (Pen. Code, § 459) in that they wilfully and unlawfully entered the residence of Michael Fioritto with the intent to therein commit theft. As to appellant Rosenberg, the information charged a prior conviction for passing counterfeit money in the state of New York.

Appellant entered a plea of not guilty and denied the prior conviction. Trial by jury was duly waived and the People's case was submitted on the transcript of evidence adduced at the preliminary examination, each side reserving the right to offer additional evidence. After reading the aforesaid transcript and hearing the testimony of appellant in his own behalf, the court adjudged him guilty as charged in the information and found the offense to be of the second degree. Appellant's motion for a new trial was denied and he was sentenced to state prison. As to the allegation of a prior conviction no finding was made. It was however stipulated in connection therewith that the court could consider the probation report which contained evidence of the prior felony conviction. From the judgment and order denying his motion for a new trial, appellant prosecutes this appeal.

As to the factual background surrounding this prosecution the record reflects that on March 5, 1958, Michael Fioritto lived at 2217 North Commonwealth, in the city of Los Angeles. About 9:30 or 10 o'clock that morning he left the house believing that everything was locked. His wife remained in the house. He returned to the house about 2:30 that afternoon

to find that someone had apparently broken into the house. Missing from the house were his wife's mink stole, his suitcase, some silverware and two hats. Altogether this property was worth from $2,500 to $3,000. Mr. Fioritto had not given permission to either appellant or Ostroff to enter his home.

About 1:30 on the afternoon of March 5, 1958, Levon Kalanter who lived across the street from Mr. Fioritto at 2222 North Commonwealth, Los Angeles, observed from his dining room window an automobile parked in front of Mr. Fioritto's residence. It was a "no parking at any time" area. He observed a man step out of the driver's side of the car and examine the underside thereof, then step around to the back of the vehicle and look under it. "All the time he was doing this, he was also looking up and down North Commonwealth Avenue, rather anxiously, rather hurriedly. At the same time, all his movements were hurried." The witness identified appellant as that man. Mr. Kalanter left his house, entered his automobile, backed it out of the driveway, and took a "good look" at the man, the vehicle and its license number. The automobile was a 1948 gray Plymouth coupé, license number GSB 789. The witness did not see the codefendant Ostroff.

Harold T. Weil, a Los Angeles city police officer, attached to the burglary detail of the detective bureau and one of the investigating officers on this case, testified that at approximately 9 a. m. on March 6, 1958, he had a conversation with appellant at the latter's home. Present was Mr. Slattery, a police officer. The statements made by appellant during this conversation were made freely and voluntarily. Officer Weil asked appellant if he owned the Plymouth parked in the rear of his house which appellant readily admitted. When asked if he had loaned that vehicle to anyone in the last two or three days, appellant replied that he had not. When asked if he had driven the vehicle on March 5th, appellant stated that he had. When asked if he was with anybody on that date, appellant stated that he was with a friend of his but could not recall his name; that this person and himself were obtaining subscriptions for a Los Angeles newspaper.

On the afternoon of March 6, 1958, Officer Weil had a conversation with defendant Ostroff, after which the officer took Ostroff to the police station, at which place the latter said, "he would like to converse in my presence with the other defendant, the defendant Rosenberg." Officer Weil testified that thereupon, "I then took the defendant Ostroff down to the cell at the Hollywood station, whereupon he had a conver-

sation with the defendant Rosenburg, at which time they both agreed to relate to us as to a burglary that had been committed on Commonwealth in the Los Feliz area of Hollywood.''

At this time defendant Ostroff stated that he would assist the police in the recovery of the property, whereupon he directed them to a home in the Montebello area where they recovered a mink stole and three stone marten furs. When asked if these came from the home up on Commonwealth Ostroff stated that they did. When asked if he had any pawn tickets, Ostroff stated that he had a pawn ticket for a suitcase pawned on Main Street which was taken from the home also, at the same time as were the furs.

On March 8, 1958, Officer Weil had a conversation with appellant. The statements made by him at this time were free and voluntary. Appellant said, ''I guess you've got me and we would like to clear up this whole mess.'' Appellant then said that between him and Ostroff the articles had been divided up and placed in pawn; that each one of them had placed separate articles in pawn after committing this burglary. Then appellant assisted the police in the recovery of further property that was taken in this burglary.

Sworn as a witness in his own behalf, appellant testified that on March 5, 1958, he was employed by a newspaper as a solicitor, and in connection with that employment was engaged in soliciting for subscriptions in the neighborhood of 2217 North Commonwealth, Los Angeles, along with Ostroff. He had been thus employed for the two months prior. Their method of operation was to take different sides of the street and move from door to door selling subscriptions, then meeting from time to time to move to different locations. Appellant was having no success and decided to leave the neighborhood. So he drove down Commonwealth to pick up Ostroff and see ''how he was doing.'' Appellant turned the corner on to Commonwealth and when halfway down the block he saw Ostroff walk to the house in question, knock at the door and enter. Appellant parked and waited. He waited about 10 minutes not knowing previously nor at that time that Ostroff was going to enter this particular house or why he was in the house. Appellant supposed that he had merely been invited in, possibly for refreshments. Ostroff came out of the house with a suitcase and a couple of packages and said, ''Let's go.'' So appellant drove off, not knowing how Ostroff procured these articles or what he had done in the house. Appellant said, ''I haven't done anything in the neighborhood. Let's

go somewhere else.'' Ostroff said, ''Let's go downtown.'' On the way downtown appellant learned that these articles had been taken from the house, did not belong to Ostroff and that he intended to pawn them. Downtown, Ostroff got out of the car and pawned the articles. Then appellant drove Ostroff home. Appellant did not at any time enter the house in question. When asked if he had made the statement, ''I guess you have got me and we would like to clear up this whole mess,'' appellant testified, ''Well, when I said, 'You got me' I said 'you arrested me.' There was nothing to talk about. 'You got me. It looks like I am going to jail.' That was it.'' When again asked if he made the particular statement, ''We would like to clear up this whole mess,'' appellant replied, ''I can help all I can, whatever he was going to ask me. I didn't know what he was going to ask me. He didn't ask me anything.'' Appellant denied that at any time he stated to the officer that any of the articles taken in the burglary had been divided between himself and his codefendant Ostroff, or that he had pawned any of such articles. Appellant testified that he merely related to the officers what knowledge he had obtained from his codefendant Ostroff. He denied the testimony of the officer that he assisted in the recovery of any of the stolen property.

Appellant's sole contention on this appeal is that the evidence lacks sufficient substantiality to sustain the trial judge's finding of guilt. With this contention we cannot agree. ■ As was said by this court in *People* v. *Mangiameli,* 149 Cal.App.2d 642, 644, 645 [308 P.2d 762] :

''. . . Where evidence, circumstantial or otherwise, establishes that a crime has been committed and that the accused was the perpetrator thereof, an appellate tribunal in reviewing a conviction will not appraise the weight of the evidence but will consider and determine only whether upon the face of the evidence it can justly be held that the trier of facts could not have found sufficient facts to warrant the inference of guilt. In other words, it must be made clearly to appear that the conclusion arrived at in the court below is unsupported by any substantial evidence upon any hypothesis whatever (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]). As was said in the case just cited, at page 681 : 'We must assume in favor of the verdict the existence of every fact which the jury could have reasonably deduced from the evidence, and then determine whether such facts are sufficient to support the verdict. If the circumstances reasonably justify the verdict of the jury, the opinion of the reviewing court that those circumstances

might also reasonably be reconciled with the innocence of the defendant will not warrant interference with the determination of the jury.' ''

Bearing in mind the rules enunciated in the case just cited, the only question is whether in the instant case, the facts and circumstances shown in evidence reasonably justified the determination by the trial judge that appellant was either one of the actors in the crime or aided and abetted his codefendant in its perpetration. ■ The question of whether or not a person who was present at the time and place of the commission of a crime has aided or abetted therein is one of fact for the trier of fact to decide from all the circumstances proven (*People* v. *Silva*, 143 Cal.App.2d 162, 169 [300 P.2d 25]; *People* v. *Beaulieu*, 144 Cal.App.2d 536, 540 [301 P.2d 304]).

■ Because circumstantial evidence is susceptible of two reasonable inferences, one looking to the guilt of the accused and the other to his innocence, does not furnish grounds for setting aside a judgment of conviction.

■ We have herein set forth in detail the evidence presented at the trial, and it is unnecessary to here repeat it. Suffice it to say we are satisfied that from all the evidence in this case it could reasonably be inferred by the trial judge that appellant actively participated in the burglary, or that he had knowledge of the burglary and aided and abetted its perpetration by acting as a ''lookout,'' driving the automobile and giving direct aid to his codefendant in effecting an escape. Either of the above purposes mentioned would be sufficient upon which to base a reasonable inference that appellant was aiding and abetting in the commission of the burglary here in question. Such a conclusion is strengthened when consideration is given to statements made by appellant to the police.

Appellant relies upon the case of *People* v. *Hill*, 77 Cal. App.2d 287 [175 P.2d 45], wherein the conviction of the driver of a getaway vehicle was reversed. The cited case is easily distinguishable from the one now engaging our attention. In the Hill case there was no showing that the accused had any previous knowledge of the intent of his companions, in fact they exculpated him entirely by their testimony that he knew nothing of their intention to commit a robbery. The police officers' testimony disclosed only that the appellant had driven his companions to the location of the crime and drove them away when they returned to the automobile. There was evidence that appellant went to sleep while the others perpe-

trated the robbery. And, appellant made no admissions as did appellant in the case at bar. When the evidentiary features of the Hill case are compared with those present in the case now before us, the factual distinctions are at once apparent. As pointed out by respondent, ''Appellant (herein) drove to the scene and acted suspiciously. He made no comment when his partner suddenly ran from a house with a suitcase and package. Then he drove him to a downtown pawnshop and admitted that he split the loot and pawned it. He admitted he was connected with the burglary by clear implication from his statements to the police.'' We are persuaded that these circumstances coupled with the statements made by appellant to the police furnish a sufficient basis to support the finding of guilt (*People* v. *Dickerson,* 131 Cal.App.2d 49, 53 [279 P.2d 991] ; *People* v. *Hopkins,* 125 Cal.App. 457, 459, 460 [13 P.2d 975] ; *People* v. *Richardson,* 10 Cal.App.2d 379, 381 [51 P.2d 1114]).

The judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Fourt, J., and Lillie, J., concurred.