ASHBURN, J.
 

 Defendants were found guilty of robbery of the first degree as charged. Stockdale alone prosecutes this appeal from the denial of his motion for a new trial and from the judgment and sentence, contending that the evidence is insufficient to establish that he participated in the robbery by aiding and abetting. The cause was submitted to the court without a jury on the transcript of the preliminary examination and additional testimony taken at the trial.
 

 The record discloses these facts: At about 11:20 p. m. on October 8, 1958, three men entered Doc's Liquor Store in Monrovia. They were later identified as Carlson, Gindrat and the appellant Stockdale. Prank Thomas, the clerk, approached the men and asked if he could be of assistance. Carlson immediately pulled a gun from his pocket and said, “Buddy, just open it up, the cash register.” Mr. Thomas complied. As he did so, Gindrat took Thomas by the neck and at gunpoint forced him into a back room. Thomas testified that appellant watched but did not speak during these proceedings, but as he was being taken into the back room he, Thomas, glanced back and saw Carlson and appellant move forward in the direction of the cash register,' “like they were going around in back of the counter.” He does
 
 *203
 
 not know what took place after that for he was then escorted into the back room from which there was no view of the store. There he was made to sit on the floor, with the gun held to his head. Gindrat went through his pockets and removed his wallet.
 

 Thomas testified that the store was equipped with a device which caused a bell to ring whenever someone passed through the door; that while he was in the back room with Gindrat, some four or five minutes, he heard the bell ring twice, “indicating that the two other fellows had left.” Gindrat called out, “How about it? Are you through out there?” or words to that effect, and, receiving no answer, left, admonishing Thomas not to move. Thomas then heard the bell ring, got up and notified the police, giving them a description of the men and of the vehicle which he had seen drive past the store and stop immediately before the three men entered. He did not open the cash register until the police arrived, when it was discovered that all of the money and the cash drawer were missing.
 

 Within 10 minutes after the robbery two patrol officers of the Arcadia Police Department, who had received a radio broadcast from the Monrovia police, spotted the vehicle and took the men into custody. Gindrat was driving the ear; Carlson was seated beside him, and appellant was “crouched down across the back seat.” The officers testified that as they were pursuing the car, “in the back seat someone was down and could not be seen, only seeing his head come up for a second.” The officers found in Carlson’s pockets some $141 in cash and a loaded .25 Colt automatic. As these things were found, Carlson made the statement, “How in hell did you bust us so quick?” and Gindrat said, “Yeah, we haven’t had time to split the money yet.” Appellant “didn’t say a word.” Cigarettes which were stolen were found in the back seat. A search of the car disclosed a plastic model of a .45 revolver under the left front seat, and the cash tray on the right-hand side.
 

 There is no question raised concerning the commission of the robbery by defendant Carlson, and appellant admits that he entered the liquor store with the other two men. His contention is that he did not know that they intended to commit the robbery, that their testimony completely exculpated him, and that there is no evidence to support an inference that he knowingly aided or assisted them in the
 
 *204
 
 perpetration of the robbery with knowledge of the wrongful intention.
 

 The defense testimony shows that there was an understanding between Carlson and Gindrat that they would stage a holdup if they found a likely place that “looked all right.” However, both Carlson and appellant insist that nothing was said in the presence of appellant concerning any plans to commit a robbery, nor did he know of the presence of the guns; that appellant was not told or consulted about any plans for a holdup.
 

 Appellant testified that when Carlson pulled his gun in the liquor store and demanded the money, he was shocked and scared; that as the clerk was being taken into the back room he left the building and went to the car. He got into the back seat so he could “stretch out or lay down” because he was extremely nervous. When asked by the court, “Why didn’t you take off down the street of any other direction? If you were innocent, why didn’t you go look for the first policemen and tell them you were framed?” he replied: “For the very simple fact I was scared. I was nervous. I didn’t know where I was at and I was going to take my best chance of getting back home.”
 

 Appellant relies upon
 
 People
 
 v.
 
 Hill,
 
 77 Cal.App.2d 287 [175 P.2d 45], for the proposition that his mere presence at the scene of the robbery will not establish his guilt as an abetter.
 

 Penal Code, section 31, provides: “. . . All persons concerned in the commission of a crime, whether it be felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission . . . are principals in any crime so committed.”
 

 The question, therefore, is whether the evidence reasonably justifies the court’s conclusion that appellant was present for the purpose of assisting in the consummation of the robbery. “Appellant’s statement that he did not know that a crime was to be committed is not sufficient to constitute irrebuttable proof of such fact. ‘Few criminals would ever be convicted if their explanations were accepted as gospel truth.’
 
 (People
 
 v.
 
 Hall,
 
 87 Cal.App. 634 [262 P. 50].) ”
 
 (People
 
 v.
 
 Jaggers,
 
 120 Cal.App. 733, 735 [8 P.2d 206].) The testimony of both Carlson and appellant was impeached by their admissions that they had each been convicted of three felonies. (Code Civ. Proc., § 2051;
 
 People
 
 
 *205
 
 v.
 
 Grischott,
 
 107 Cal.App.2d 631, 634 [237 P.2d 712];
 
 People
 
 v.
 
 Jackson,
 
 167 Cal.App.2d 270, 273 [334 P.2d 114].)
 

 “ One may aid and abet without having previously entered into a conspiracy to commit a crime.
 
 (People
 
 v.
 
 Bond
 
 (1910), 13 Cal.App. 175, 185-186 [109 P. 150];
 
 People
 
 v.
 
 Wade
 
 (1945), 71 Cal.App.2d 646, 652 [163 P.2d 59].)
 

 “ While mere presence alone of the accused at the scene of the homicide is not sufficient to make him a participant, nor is he necessarily guilty because he does not prevent it, his presence is a circumstance tending to support a finding that he is a principal. In order to have aided and abetted the person who actually committed the unlawful act, facts and circumstances must be adduced, tending to show that the accused aided such person by acts, or encouraged him by words or gestures, before a conviction can be sustained. (12 A.L.R 279, 280, 281.) Not only must he aid such direct perpetrator by assisting or supplementing his efforts, but he must, with knowledge of the wrongful purpose of the perpetrator, abet such person by inciting or encouraging him to commit a crime.
 
 (People
 
 v.
 
 Bole
 
 (1898), 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50];
 
 People
 
 v.
 
 Bond, supra,
 
 13 Cal.App. 175, 185.)
 

 “ It need not be shown, however, that such direct perpetrator communicated his purpose to the accused in order to make him liable as an aider and abettor, for he would be liable as such if he were present, and knew the intention of the other, and either by acts, words or gestures, aided or encouraged the commission of the crime.”
 
 (People
 
 v.
 
 Le Grant,
 
 76 Cal.App.2d 148, 153 [172 P.2d 554].) See also
 
 People
 
 v.
 
 Grischott, supra,
 
 107 Cal.App.2d 631, 634;
 
 People
 
 v.
 
 Lewis,
 
 113 Cal.App.2d 468, 470 [248 P.2d 461];
 
 People
 
 v.
 
 Villa,
 
 156 Cal.App.2d 128, 134 [318 P.2d 828].)
 

 In
 
 People
 
 v.
 
 Moore,
 
 120 Cal.App.2d 303 [260 P.2d 1011], appellant contended that because he said nothing and did nothing during the progress of the robbery he was not a participant and did not aid or abet the robbery. The court, in holding that appellant was not a mere bystander or onlooker, states: “He may have committed no overt act during the robbery but none was required. His presence could have given encouragement to his companions and acted as a deterrent to any continued resistance on the part of Lopez. He was in the position of a lookout and though he gave no warning none was required. He was in the company of
 
 *206
 
 the other defendants before the crime was committed, remained with them during the robbery, fled with them from the hotel, and when arrested in company with the others had the knife and stolen bills in his possession. That is sufficient to make him a participant in the crime.” (Pp. 306-307.) (See also
 
 People
 
 v.
 
 Wilson, 93
 
 Cal.App. 632, 636 [269 P. 951] ;
 
 People
 
 v.
 
 Rosenberg,
 
 170 Cal.App.2d 600, 605 [339 P.2d 143] ;
 
 People
 
 v.
 
 Wooten,
 
 162 Cal.App.2d 804, 811 [328 P.2d 1040] ;
 
 People
 
 v.
 
 Jaggers, supra,
 
 120 Cal.App. 733, 735.) In
 
 People
 
 v.
 
 Luna,
 
 140 Cal.App.2d 662, 664 [295 P.2d 457], it is stated: “It is elementary that one who merely stands by, watching an assault and even approving of it is not aiding and abetting.
 
 (People
 
 v.
 
 Hill,
 
 77 Cal.App.2d 287 [175 P.2d 45].) Such a person is a mere bystander, and if Lopez was nothing more, he was not an accessory to the assault upon Barajas. But whether, as a matter of fact, he was a bystander or a participant was for the jury to decide. ’'
 

 Appellant’s reliance upon
 
 People
 
 v.
 
 Hill, supra,
 
 77 Cal.App. 2d 287, is misplaced. In that ease there was no evidence upon which to base an inference that appellant had any knowledge of the felonious purpose entertained by his two codefendants; he knew nothing about the robbery. The author of that opinion distinguishes it in
 
 People
 
 v.
 
 Mansour,
 
 103 Cal.App.2d 592 [230 P.2d 52], wherein it is stated at page 600: “The case of
 
 People
 
 v.
 
 Hill,
 
 77 Cal.App.2d 287 [175 P.2d 45], is cited by appellant in support of her contention that the judgment should be reversed because she knew nothing of what was being done in the pharmacy, or of what had been intended. It does not support her. The appellant Ingram in the cited ease first met his eodefendants less than three hours before the latter committed robbery. They induced him to drive them around for a while to look for some girls. After going to the south end of the city they asked
 
 him to
 
 park on a side street and await their return. He sat in his car, shut off his motor and went to sleep. On their reappearance after the robbery he switched on his lights. He did not see Hill’s revolver, nor did either companion mention their criminal purpose to him. He neither instigated nor advised it, received no fruits of the crime or was he promised any. His companions exculpated him and there was no reason for discrediting them.” The court held in the Mansour case that the presence of defendant at the scene of the crime, together with additional facts in evidence, was sufficient to support an inference that defendant intentionally participated.
 

 
 *207
 
 Likewise, the Hill case is factually distinguishable from the instant ease. Without again detailing the evidence, suffice it to say that the presence of appellant at the commission of the robbery, together with the additional evidence of the circumstances preceding, attending, and following the perpetration of the crime, is legally sufficient to warrant the conclusion that appellant had knowledge of the wrongful intentions of Carlson and Gindrat both before and during the time the robbery was committed, and was a participant.
 

 Defendant has appealed from the “Judgment and Sentence.” “The judgment in a criminal action is the sentence.
 
 (People
 
 v.
 
 Tokich,
 
 128 Cal.App.2d 515, 519 [275 P.2d 816]). . . . Affirmance of the judgment carries with it affirmance of the sentence.”
 
 (People
 
 v.
 
 Perkins,
 
 147 Cal.App. 2d 793, 797 [305 P.2d 932].)
 

 The judgment and order are affirmed.
 

 Fox, P. J., and Herndon, J., concurred.