[Crim. No. 3859. First Dist., Div. Two. Apr. 13, 1961.]

THE PEOPLE, Respondent, v. THOMAS J. FLEMING, Appellant.

Richard H. Merrill, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, Arlo E. Smith and Derald E. Granberg, Deputy Attorneys General, for Respondent.

KAUFMAN, P. J.—By information, the appellant, Thomas J. Fleming, and one John Taylor, were charged with two counts of assault with the intent to commit murder (Pen. Code, § 217). The appellant was also charged with several prior convictions and admitted these. The appellant and Taylor were tried together by a jury and found guilty of two counts of the lesser included offense of assault with a deadly weapon (Pen. Code, § 245). On this appeal from the judgment of conviction entered on the verdict and the order denying his motion for a new trial, the appellant Fleming argues that (1) there is no substantial credible evidence of a conspiracy to commit assault with a deadly weapon; (2) the assaults were not within the reasonable contemplation of even the alleged conspiracy; (3) there is no evidence that the

appellant aided and abetted Taylor by participating in the assaults. No appeal has been taken by the codefendant Taylor.

The record reveals the following: On March 3, 1960, John Taylor arrived in San Francisco from his home State of Washington, and about 10:30 p. m. met the appellant and a "fellow named Al," who offered Taylor a drink from their bottle. The three went to a cocktail lounge and later, Taylor and the appellant went to Foster's at Turk and Jones and sat there all night. Thereafter, Taylor moved into an apartment at 640 Eddy Street with the appellant and two other people. On March 4, 1960, Taylor bought a .32 caliber Colt automatic pistol from a man he met at Foster's Restaurant for $7.00.

On the evening of Sunday, March 6, 1960, Taylor and the appellant met about 6:30 p. m. They went to several taverns, and about 1 a. m. [Monday, March 7, 1960], appeared at the Hilo Hut bar at 600 Larkin Street, owned by Leon George Simonoff, one of the victims. Simonoff had known the appellant for two or three years, as the appellant had occasionally done odd jobs for him around the bar.

When the appellant and Taylor entered, Simonoff was tending bar alone. There were about a dozen customers in the Hilo Hut, which is about 15 by 32 feet in size. Simonoff testified that on a previous occasion, he had ordered the appellant and Taylor from the bar because Taylor who was only 18 was unable to show that he was of legal age, and denied serving Taylor at any time. The appellant and Taylor first entered the restrooms at the rear of the Hilo Hut bar. Later, the appellant walked to the center of the bar where Simonoff stood. Simonoff spoke first, and said: "Now, what do you want now, Tommy? I told you I don't want you in here so take a hike." The appellant replied: "You are not going to throw me out of here again, you big so-and-so," and continued: "I am going to blow your head off, you - - - - - - and I brought somebody with me this time." Meanwhile, Taylor approached from the rear of the room, pushed the appellant aside and asked him: "What is this the big blankety blank giving you, a bad time?" Taylor then raised his right coat pocket where he had a gun concealed at Simonoff and said: "Look you big blank blank, I will blow your head off. I have got a gun with me this time." Taylor continued to use profane language at Simonoff.

Just then, the appellant started moving toward the back corner where Bill Michaels sat. Taylor turned away from

Simonoff and asked the appellant: "Is that the guy you wanted to get?" and also turned toward Michaels. Simonoff leaped over the bar, grabbed Taylor's right-hand pocket with his right hand, grabbed the barrel of the gun, and hit Taylor with his left hand. Taylor fell to the floor. Simonoff was on top of Taylor and some of the other customers started to pull Simonoff off. Simonoff shouted that Taylor had a gun. At the very same instant, Simonoff threw him out of the front door and closed the door. Afterwards, he realized that he had been wounded in the chest. Taylor was hit in the leg, as was the appellant. Another customer, D. N. Towers, was hit twice.

There was conflicting testimony and a certain amount of confusion as to the appellant's activities during the struggle between Taylor and Simonoff; Towers testified that after the appellant and Taylor emerged from the restroom, the appellant remained in the rear of the bar and only Taylor advanced toward Simonoff; that after the fight, the appellant started to run toward it, but Towers pushed him back, and told him to stay out of it. Another customer, Lipay, testified that when the appellant began to move toward the fight, he pushed him against the wall and told him to stay where he was. Still another customer, Byrne, testified that while Simonoff ejected Taylor, Towers ushered Fleming out the door. Towers followed Taylor outside, where more shooting occurred, and then returned, bleeding from two bullet wounds.

Taylor testified that the appellant never saw his gun or knew of it as he kept it hidden; that while he was arguing with Simonoff, the appellant was talking with a woman at the rear of the bar; that he fired the shots only to scare Simonoff; and that early on the morning of the 6th, he and appellant had been in the Hilo Hut and Simonoff had served drinks to both of them.

At the time the shooting outside occurred, a police car was about half a block away and noticed the commotion in front of the Hilo Hut. Taylor ran and was apprehended a half a block away. While Taylor was being handcuffed, the appellant, who was being restrained by some of the customers from the Hilo Hut, broke free and attempted to flee. He was grabbed by a police officer. The police found six empty cartridge cases, two in the bar and four in the street; all had been fired from a .32 caliber Colt automatic. When arrested, Taylor had the gun in his possession and additional ammunition in his pockets. The appellant did not testify at the trial.

The arguments on appeal are that there is no substantial credible evidence of conspiracy to commit assault with a deadly weapon; that the assaults were not within contemplation of even the alleged conspiracy and there is no evidence or any evidence that the appellant aided and abetted Taylor by participating in the assault. ▋ We are somewhat puzzled by the arguments relating to conspiracy as the appellant was not charged with conspiracy, but was charged and found guilty as a principal (Pen. Code, § 30; *People* v. *Talbott,* 65 Cal.App.2d 654, 660 [151 P.2d 317]). As the appellant was convicted as a principal, whether or not he may have been a conspirator is immaterial (*People* v. *Talbott, supra,* pp. 660-661).* ▋ Under the statutory definition, a principal includes ''[a]ll persons concerned in the commission of a crime'' and specifically those who ''aid and abet in its commission'' or who have ''advised and encouraged its commission'' (Pen. Code, § 31). As principals, such persons are equally guilty with the direct perpetrator (Pen. Code, § 971).

▋ Furthermore, it is well settled that one may aid and abet the commission of a crime without having previously entered into a conspiracy to commit it (*People* v. *Carlson,* 177 Cal.App.2d 201 [2 Cal.Rptr. 117]; *People* v. *Villa,* 156 Cal.App.2d 128 [318 P.2d 828]; *People* v. *Grischott,* 107 Cal. App.2d 631 [237 P.2d 712]), so that it was not necessary for the People to prove a conspiracy between the appellant and Taylor. We will, therefore, regard appellant's arguments as going to the sufficiency of the evidence to sustain the verdict. Appellant also argues that there is no credible substantial evidence that he aided and abetted Taylor by participating in the assaults, as three witnesses testified that he did not participate in the fight between Taylor and Simonoff.

▋ In order to hold the appellant as an aider or abettor, the test is whether he in any way, *directly or indirectly,* aided the perpetrator by acts or encouraged him by words or gestures (*People* v. *Villa, supra*). Here, appellant's presence at the scene of the crime is uncontroverted. ▋ While mere presence alone at the scene of the crime is not sufficient to make him a participant (*People* v. *Hill,* 77 Cal.App.2d 287 [175 P.2d 45]), whether a person who is shown to have been present at the scene of the crime was an aider or abettor,

---

*Under these facts, the appellant could probably have been convicted of conspiracy, a separate and distinct offense (*People* v. *Hoyt,* 20 Cal.2d 306 [125 P.2d 29]).

is a question of fact for the jury to decide from all of the circumstances proved (*People* v. *Esparza*, 182 Cal.App.2d 656, 658 [6 Cal.Rptr. 568]; *People* v. *Kamm*, 178 Cal.App.2d 863 [3 Cal.Rptr. 387]; *People* v. *Rosenberg*, 170 Cal.App.2d 600 [339 P.2d 143]; *People* v. *Perez*, 169 Cal.App.2d 473 [337 P.2d 539]). Among the circumstances, the jury may consider in addition to presence (*People* v. *Turner*, 86 Cal. App.2d 791, 802 [195 P.2d 809]), are companionship and conduct before and after the offense (*People* v. *Moore*, 120 Cal.App.2d 303 [260 P.2d 1011]), or an attempt to prevent the crime (*cf. People* v. *Villa*, 156 Cal.App.2d 128, 134 [318 P.2d 828]). ▇ Whether the act committed was the natural and probable consequence of the act encouraged and the extent of the defendant's knowledge are also questions of fact (*People* v. *Goldstein*, 146 Cal.App.2d 268 [303 P.2d 892]).

▇ The fact that the appellant was not armed does not make him less guilty, as an aider and abettor is chargeable in the same degree as the actual perpetrator (*People* v. *Perkins*, 37 Cal.2d 62, 64 [230 P.2d 353]).

▇ Here, it is uncontroverted that the appellant and Taylor were close companions, were living together, and on the evening preceding the shooting had made the rounds of several bars together. The jury could infer that they shared a mutual motive as they had both been ordered from the Hilo Hut several days earlier. From appellant's remarks to Simonoff and from the fact that the appellant and Taylor were living together and Taylor had the gun for several days, the jury could infer that the appellant knew of Taylor's gun. The jury was not required to believe Taylor's testimony that appellant did not know about the gun. Taylor's comment to the appellant about Michaels, i.e., "Is that the guy you wanted to get?" indicates joint action and purpose. Two witnesses testified that the appellant would have helped Taylor in the fight with Simonoff but for their restraint. The appellant also demonstrated a consciousness of guilt when he attempted to flee from the police officer after Taylor had been arrested.

Appellant further argues that there is insufficient evidence that he aided and abetted Taylor, as the testimony of the witness Simonoff is not credible and inherently improbable under the rule stated in *People* v. *Singh*, 11 Cal.App.2d 244 [53 P.2d 403]. ▇ It is hornbook law that the credibility of witnesses is the exclusive province of the trier of fact. ▇ Furthermore, to warrant the rejection of the testi-

mony of a witness who has been believed by the trial court there must exist either a physical impossibility that they are true, or their falsity must be apparent without resorting to inferences or deductions.

An appellate court may set aside the verdict of a jury only when there is no substantial or credible evidence in the record to support it or where the evidence relied upon by the prosecution is so inherently improbable or false as to be incredible (*People* v. *Treggs,* 171 Cal.App.2d 537 [341 P.2d 342]). Conflicts and even testimony which is subject to justifiable suspicion do not justify the reversal of the judgment (*People* v. *Huston,* 21 Cal.2d 690, 693 [134 P.2d 758] ; *People* v. *Norman,* 175 Cal.App.2d 348 [246 P.2d 221]).

It is equally well settled that a jury can give credence to a witness whose testimony is contradictory or inconsistent (*Bitsekas* v. *Parechanian,* 67 Cal.App. 148 [226 P. 974] ; *People* v. *Haywood,* 131 Cal.App.2d 259 [280 P.2d 180]) or even false in part (*Robinson* v. *Robinson,* 159 Cal. 203 [113 P. 155]). Here, the jury by its verdict made the factual determination that the assaults on Simonoff and Towers were the natural and reasonable or probable consequences of acts which the appellant aided and abetted. Here, the evidence as summarized is amply sufficient to support such finding. The trial court also reconsidered the matter on the motion for a new trial. As the result is supported by sufficient evidence, it cannot be disturbed on appeal (*People* v. *Gutierrez,* 35 Cal.2d 721 [221 P.2d 22]).

Judgment of conviction and order denying the motion for a new trial are each affirmed.

Draper, J., and Shoemaker, J., concurred.