[Crim. No. 15629. Second Dist., Div. Four. Aug. 21, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES MICHAEL TAMBINI, Defendant and Appellant.

Richard H. Levin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Bernard S. Kamine, Deputy Attorney General, for Plaintiff and Respondent.

DUNN, J.—By information Tambini, Dawson, Houltin and Fernandez were charged with possessing marijuana for sale, a felony, in violation of Health and Safety Code, section 11530.5. Following the preliminary examination they were held to answer in the superior court. The record before us is silent as to disposition of Houltin's case. After several continuances, the case against Dawson, Fernandez and Tambini was called for trial December 6, 1967. Dawson failed to appear and his bail was forfeited. Trial of Tambini and Fernandez was ultimately continued to December 21, 1967, when Fernandez's trial was severed and continued. Tambini waived trial by jury and was tried by the court and found guilty. Following conviction, proceedings were suspended and Tambini was ordered placed on five years' probation, to spend the

first 180 days thereof in county jail. From this order he appeals (Pen. Code, § 1237).

The contentions here advanced by appellant require a recitation, unfortunately long, of the facts.

On May 11, 1967, at about 8 p.m., Police Sergeant Hannon, sometimes known as "Mike," talked on the telephone with appellant who was then in the apartment of one Hamilton located on North Sycamore Street. It was Hannon's understanding that appellant would arrange that Hannon's subordinate (Officer Villalba) meet with some people who wanted to sell marijuana. Appellant told Hannon the people would have guns. When appellant inquired where the meeting should take place, Hannon suggested Seventh Place and Santa Fe Avenue.

Sergeant Hannon instructed Officer Jose Villalba to go to the apartment and there contact "Jimmie" who would lead him to Seventh and Santa Fe where the sale of a large amount of marijuana would occur at 9 p.m. Together with California State Narcotic Agent Edmond Reyes, Villalba went to the address and met appellant, introducing himself and Reyes as "Joe" and "Eddie," whereupon appellant said he was "Jimmie" and asked if "Mike" had sent them. After appellant made a telephone call the three got in Villalba's car. (Of course, the officers drove an unmarked police vehicle and were, themselves, dressed casually and not in uniform. They were operating "under cover.")

While driving to the rendezvous, marijuana was mentioned and appellant said "he had never dealt in this type of thing; that his action was lewd photographs." Reyes and Villalba pretended unfamiliarity with the city so that appellant directed where to enter and leave the freeway, where to turn and where to park at Seventh Place and Santa Fe. A 1963 Lincoln automobile drove up and parked soon thereafter. Appellant went over to it and got in, returning to tell the officers one of them should go with the two men in the Lincoln and be driven to the "stash." Reyes got in the Lincoln which was occupied by Fernandez and Dawson. Dawson asked if he had the money and he said he did not; he was merely to go see the marijuana, return and tell "Joe" who would telephone "Mike" who would then bring the money. Reyes was driven to Seventh and Mills streets where he was directed to get out and go over to a parked Buick automobile. Dawson unlocked it and they both got in, Dawson driving it with Fernandez following in the Lincoln. While so driving, Dawson told Reyes to open a cardboard box on the back seat. He did and inside it saw

approximately 40 kilos of marijuana in compressed brick form, each brick weighing one kilo. Reyes observed defendant Houltin walking down the street and saw Fernandez pull the Lincoln over near him and Houltin get in it. Reyes was then told by Dawson to leave the Buick and reenter the Lincoln. He did, followed by Dawson. Fernandez told Houltin to go over to the Buick, drive it to Seventh and Alameda and to wait there. Then Dawson, Fernandez and Reyes drove back in the Lincoln to where Reyes' car was parked. There Reyes drew Villalba aside to tell him what had occurred, saying that Dawson had told him there was more marijuana in the trunk of the Buick.

Reyes stayed in the car with appellant while Villalba was then taken in the Lincoln by Fernandez and Dawson. At Seventh and Mills, Houltin got in the Lincoln and the four drove to Seventh and Alameda where Dawson instructed Villalba to telephone "Mike" and have him bring the money following which Villalba would be given the keys to the "stash wheels," meaning the vehicle where the marijuana was located. Villalba went to a telephone booth and called the narcotic division asking to have Sgt. Hannon call him back. When he did so, Villalba told Hannon of the events and what Reyes had reported to him. Within minutes, Hannon arrived with another officer, Kleffman, and arrested Fernandez, Houltin and Dawson at the parked Lincoln. In plain sight on the floor Hannon saw a revolver.

Officer Kleffman searched the Lincoln and under its right front seat found a set of car keys with an attached tag bearing vehicle license number REY 995. He and Hannon drove two blocks and located the Buick, which had this license number, parked at the curb of Seventh Street near Mills. It was locked. Through a window Hannon saw a large cardboard box on the back seat. Kleffman unlocked the luggage compartment, in which were found two cloth bags and five suitcases, three of which were opened to disclose cellophane wrapped bricks of marijuana. The cardboard box was opened and also contained marijuana. Altogether, 123 bricks of marijuana weighing 245 pounds, were recovered. Meanwhile, other police officers had located and arrested appellant Tambini.

At his trial, appellant testified to having been at Hamilton's apartment, being introduced on the telephone by Hamilton to "Mike," and arranging to take Mike's "people" to meet with some men who would sell them "merchandise." He denied knowing what merchandise was to be sold and said he

was just being paid to make the introductions. By the time the three had reached the rendezvous and parked, however, he knew that the sale of marijuana was involved.

I. *Should Use Of The Marijuana As Evidence Have Been Suppressed Because (A) Officer Reyes Gained Observation Of It By Trickery and (B) Appellant's Fourth Amendment Rights Were Violated?*

 Appropriate objections were made prior to admission of the contraband into evidence. We are concerned only with whether the court's rulings were proper.

Officer Reyes was invited by Dawson to inspect the marijuana in the cardboard box resting on the rear seat of the Buick. Relying upon *People* v. *Reeves* (1964) 61 Cal.2d 268 [38 Cal.Rptr. 1, 391 P.2d 393], appellant claims this observation was achieved through illegal trickery because Reyes falsely represented he wanted to buy it. The point is without merit. "Deception is necessary at times to accomplish the mission of police departments and does not by itself, violate the Constitution." (*People* v. *Miller* (1967) 248 Cal. App.2d 731, 739 [56 Cal.Rptr. 865]. If, at the outset, Reyes had told Dawson that he was a police officer who wanted to buy marijuana we may imagine the outcome. His only deception was to pretend he was not a police officer. His observation of the marijuana voluntarily displayed to him was neither a "search" nor was it that wrongful invasion of privacy proscribed by the cases.

 The Fourth Amendment to the United States Constitution safeguards people against "unreasonable searches and seizures" of their "persons, houses, papers and effects." Appellant claims this right was violated because the Buick was searched without a search warrant. He fails to make any distinction between the 40 bricks of marijuana displayed in the box and the 83 bricks found in the luggage compartment.

The Buick was searched after the defendants had been arrested. The legality of the arrests is unquestioned and appellant admits a warrantless search of the premises in the immediate vicinity of an arrest is a legal search.[1] But, he points out, the Buick was located two blocks from the place where his codefendants were arrested and he contends the search of it was not incidental to those arrests.

---

[1]*Chimel* v. *California*, 395 U.S. 752 [23 L.Ed.2d 685, 89 S.Ct. 2034] decided 6/23/69 is not in point factually and, in any event, is inapplicable. *People* v. *Castillo* (1969) 274 Cal.App.2d 508, 512-513 [78 Cal. Rptr. 869].

As to the box of marijuana, Reyes' observation of it was hardly the result of a "search." Though he could have seized it immediately as contraband he, instead, gave full information about it to his partner, Villalba, who thereafter reported to Sgt. Hannon. It was Hannon who, with his own partner, made the arrests, located the parked Buick and observed the cardboard box with its known contents on the rear seat. No search warrant was required to find that which was in plain sight and the seizure was lawful.

While the contraband in the Buick's luggage compartment was not observed beforehand, its presence in the "stash wheels" was certainly predictable from the facts known to the officers. On a theory expressed by the trial judge, the search and seizure of it can be considered an incident of the arrests. He said, "Here we are really at the scene of the crime. I think the Court is entitled to consider the fact this was a continuing incident, didn't take place in any one particular place, and this was not because of anything the police officers did, but this was because the defendants' designed it this way. So I don't think that the defendants can set it up in this manner and then claim that a search of the Buick was not incidental to the arrest."

Furthermore, an automobile is not the "house" mentioned in the Fourth Amendment, and search of such is treated differently. ■ "If a police officer has probable cause to believe that an automobile contains contraband he need not obtain a search warrant in order to search it." *People* v. *Terry* (1964) 61 Cal.2d 137, 152 [37 Cal.Rptr. 605, 390 P.2d 381]. ■ Again, as said in *People* v. *Gale* (1956) 46 Cal.2d 253, 255 [294 P.2d 13], "Since an automobile may readily be moved from place to place, its search without a warrant is not unreasonable if the officer has reasonable cause to believe it is carrying contraband." ■ The officers here had reasonable cause to search the Buick.

■ Appellant also contends the officers should first have secured a search warrant, sending one officer to do so while the other guarded the Buick. This is answered in *People* v. *Kampmann* (1968) 258 Cal.App.2d 529, 533 [65 Cal.Rptr. 798] wherein, after discussing the problem, the court said: "To require in the present case that one officer go to obtain a warrant while the other remains camped by the marijuana would further no recognizable interest; it would magnify technicality at the expense of reason." Appellant's reliance upon *People* v. *Anderson* (1968) 266 Cal.App.2d 125, 132

[71 Cal.Rptr. 827], is misplaced since it supports respondent's position, rather than appellant's. The dictum cited from that case in appellant's brief merely distinguishes it from the case of *People* v. *Marshall* (1968) 69 Cal.2d 51 [69 Cal.Rptr. 585, 442 P.2d 665].

## II. *Was Appellant Entrapped?*

The trial judge considered the evidence and the argument of counsel and there is ample evidence to sustain a finding against appellant on this point. (*People* v. *Moraga* (1968) 244 Cal.App.2d 565, 568 [53 Cal.Rptr. 563].) "Thus, common California formulations of the doctrine of entrapment state that the availability of the defense depends upon whether the intent to commit the crime originated in the mind of defendant or in the mind of the entrapping officer [citations omitted], and that where a defendant has a preexisting criminal intent, the fact that when solicited by a decoy he commits a crime does not show entrapment. . . ." *People* v. *Benford* (1959) 53 Cal.2d 1, 10 [345 P.2d 928].

## III. *Was The Evidence Insufficient To Justify Appellant's Conviction?*

 Appellant thus states this point in his brief: "According to appellant, he merely put a willing buyer in touch with a willing seller. This testimony is clearly substantiated by the People's witnesses. Appellant was not to be involved in the transfer of the money or the narcotics. He was merely to receive a finder's fee. The narcotics did not even belong to appellant. All appellant did was to go with the purported buyers to a place where they were met by the sellers. It was the sellers who drove the agent to the Buick and showed him the marijuana."

While at one point during the trial the court expressed the view that all evidence showing probable cause to search was admissible also on the question of guilt (because there was some evidence of a conspiracy, even though the same was not charged; see: Witkin, Cal. Criminal Procedure (1963) p. 182, § 192), when further evidence was educed he concluded no conspiracy had been shown, at the same time stating there was evidence of aiding and abetting (Pen. Code, § 31). He thereupon excluded from the guilt determination all evidence of hearsay conversations taking place outside appellant's presence, but permitted all other evidence to be considered.

Despite appellant's protestations of ignorance and of being an innocent "finder" of sellers of "merchandise," there is

ample evidence to the contrary. After introducing himself as "Jimmie" to the undercover police officers, he entered their car, directed them to the rendezvous, discussed marijuana enroute, on reaching the point of rendezvous admittedly knew the sale of marijuana was involved and there told one officer to go with his codefendants in the Lincoln to see the "stash."

Nevertheless, the conviction must be reversed. Appellant was charged only with possessing marijuana for sale (Health & Saf. Code, § 11530.5) and not with selling or offering to sell it (Heath & Saf. Code, § 11531). The amount of marijuana involved leads perforce to the inference that an intention to sell it existed on the part of someone; the musical-chair maneuvering of the participants bears this out. However, there was no showing that appellant, physically or by imputation possessed the marijuana; he had neither actual nor constructive possession. To affirm the trial court, therefore, we must find from the record before us that appellant aided and abetted his codefendants, thereby becoming a principal to the crime. We are unable to find such evidence.

For all the record shows a codefendant, or codefendants, acquired possession of the marijuana with the intention of selling it long before appellant got involved. There is no evidence to show that he either participated in the acquisition or did anything toward maintaining possession, once acquired. In other words, there is no evidence that any act of his aided the others in possessing marijuana with that intention to sell necessary to complete the crime. ▮ As observed in *People v. Masters* (1963) 219 Cal.App.2d 672, 679-680 [33 Cal.Rptr. 383]: " 'Aid,' within the meaning of this section, means to assist, to help, or to supplement the efforts of another and does not imply guilty knowledge of felonious intent. (*People v. Ellhamer*, 199 Cal.App.2d 777, 781 [18 Cal.Rptr. 905]; *People v. Etie*, 119 Cal.App.2d 23, 28 [258 P.2d 1069]; *People v. Dole*, 122 Cal. 486, 492 [55 P. 581, 68 Am.St.Rep. 50].) ▮ To 'abet' a person in the perpetration of a crime one must aid or assist the direct perpetrator with knowledge of his wrongful purpose. (*People v. Williams*, 179 Cal.App.2d 487, 490 [3 Cal.Rptr. 782]; *People v. Goldstein*, 146 Cal.App.2d 268, 272-273 [303 P.2d 892].) ▮ In order to hold an accused as an aider and abettor, the test is whether the accused, in any way, directly or indirectly, aided the perpetrator, with knowledge of the latter's wrongful purpose, by words or gestures. (*People v. Villa*, 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People v. Fleming*, 191 Cal.App.2d 163, 168 [12 Cal.

Rptr. 530]; *People* v. *Carlson,* 177 Cal.App.2d 201, 205 [2 Cal.Rptr. 117].) ▇▇▇ Accordingly, one may aid and abet without having previously entered into a conspiracy to commit a crime. (*People* v. *Carlson, supra,* p. 205; *People* v. *Fleming, supra,* p. 168).'' (Also see: *People* v. *Ellhamer* (1962) 199 Cal.App.2d 777, 781 [18 Cal.Rptr. 905]; *People* v. *Belenger* (1963) 222 Cal.App.2d 159, 163 [34 Cal.Rptr. 918].)

We do not hold that to be found guilty as a principal under Penal Code, section 31 appellant must aid and abet each of the acts comprising the crime, *i.e.:* (1) possessing with (2) intent to sell. ▇▇▇ As we said in *People* v. *Rosales* (1964) 226 Cal.App.2d 588, 592 [38 Cal.Rptr. 329] : ''. . . an aider and abettor . . . may be convicted of a crime even though he did not commit one or more of the prohibited acts constituting the elements of the crime.'' ▇▇▇ We hold only that here there is no evidence appellant aided or abetted others in committing the crime charged. ▇▇▇ As stated by our Supreme Court in *People* v. *Francis* (1969) 71 Cal.2d 66, 72 [75 Cal.Rptr. 199, 453 P.2d 591] : ''A conviction for possession of marijuana may be upheld where there is evidence that the defendant aided and abetted another in committing the crime of possession of narcotics. [Citations omitted.] Here, however, although there is evidence that Francis aided and abetted Gary Anderson in committing the crime of sale of marijuana, no claim is made, and it does not appear, that there is any evidence that Francis aided and abetted Gary Anderson in committing the crime of possession of marijuana. . . . The record does not show that Francis aided or encouraged Gary Anderson in obtaining or retaining possession of marijuana. So far as appears, when Francis expressed interest in buying marijuana Gary Anderson may already have had possession of the marijuana he later sold; the record shows merely that Gary Anderson stated he would have to go to Bell Gardens to pick it up.''

Under the circumstances outlined the judgment must be, and it is, reversed.

Jefferson, Acting P. J., and Kingsley, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied October 15, 1969. McComb, J., was of the opinion that the petition should be granted.