[Crim. No. 12750. Second Dist., Div. One. Dec. 12, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. JAMES
HAWKINS et al., Defendants and Appellants

Sheldon M. Jaffe and Clifford S. Dicker, under appointments by the Court of Appeal, for Defendants and Appellants.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Richard H. Cooper, Deputy Attorney General, for Plaintiff and Respondent.

LILLIE J.—On September 20, 1968, this court filed its opinion (*People* v. *Hawkins*, (Cal.App.) 71 Cal.Rptr. 538) affirming the judgments herein. No petition for rehearing was filed. On November 1, 1968, appellant Hawkins filed a document in the Supreme Court of the State of California which it construed to be a petition for hearing. On November 13, 1968, the Supreme Court made its order[1] granting the petition, retransferring the cause to this court with directions to make appropriate modifications in the text of its opinion and refile the same with a modified dispositive order and affirming the judgments in all other respects.

A jury convicted defendants of first degree robbery of an employee of Seaboard Finance Company (count III) and assault with a deadly weapon upon a customer of Seaboard (count IV). They were acquitted of robbery allegedly committed three days earlier (count I); and count II, alleging an

---

[1]"Petition of appellant James Hawkins for hearing GRANTED; the cause is transferred to this court and retransferred to the Court of Appeal, Second District, Division One. That court is directed, after making appropriate modifications to the text of its opinion, to refile the same with the following dispositive order: The judgments are modified to provide that the execution of sentence as to Count IV be stayed pending appeal and service of sentence as to Count III, such stay to become permanent upon the completion of sentence as to Count III. In all other respects the judgments are affirmed."

assault with a deadly weapon with intent to commit murder on the same date, was dismissed. The court sentenced both defendants to state prison, the sentences on each count to run consecutively to that imposed in another proceeding; stays of execution were granted as to count IV pending appeal of the judgment on count III, such stay to become permanent when the sentence on count III is completed. (See *People* v. *Niles*, 227 Cal.App.2d 749, 755 [39 Cal.Rptr. 11].) Defendants appeal from the judgments.

Appellant Walters challenges the sufficiency of the evidence, particularly certain identification testimony, to sustain the finding of his guilt. While apparently conceding that such point standing alone does not warrant a reversal, he nevertheless contends that when considered in conjunction with a second assignment of error, the two points combined require a remand for a new trial. The second assignment concerns a newspaper article, published during the course of the trial, in which reference was made to the recent sentencing of each appellant in another criminal proceeding; according to Walters, his motion for mistrial should have been granted even though all jurors indicated, after inquiry by the court, that they had not read the article in question.

Appellant Hawkins also complains that the identification testimony was unsatisfactory, more specifically as it related to the assault charged in count IV; he further contends that the striking of the victim was incidental to the robbery, thus it was error to impose a sentence (and double punishment) for both robbery and assault (Pen. Code, § 654). A final point relates to asserted errors in the instructions.

On November 24, 1965, Barbara Hawkins was employed as a bookkeeper at a branch office of Seaboard Finance Company. About 3:45 p.m. she saw defendants on the premises; each was armed—Walters carried a revolver and Hawkins a shotgun. They ordered all the employees, some six in number, to lie down on the floor, after declaring: "This is a holdup." Hawkins then told Barbara to get up; he handed her a bag and directed her to get the money out of the cash drawers; unlocking the drawers, she gave Hawkins $167. Defendants then said they wanted the money in the safe; when she told them there was nothing in it, Walters checked on her statement. Hawkins then told everybody to sit down and remain quiet. All complied until a commotion was heard in one of the customer cubicles or booths; it later developed that it was caused by the assault alleged in count IV.

The victim of the assault, Richard Shellmire, testified that

he was at the Seaboard office with his wife "trying to consolidate my bills into one." While doing so, he heard a voice saying, "Well, this is a holdup." When he looked up, he observed Waters, whom he identified as making the statement, with a revolver in his hand. Shellmire told his wife: "Don't move anything. It's a robbery or something going on. Someone may get hurt." About three or four minutes later, he was struck over the head from behind; when struck he heard his assailant say: "I told you this was a holdup." According to Shellmire, it appeared to be the same voice which he had heard in a similar statement minutes earlier.

Robert Bickford, branch manager of the Seaboard office, stated that he saw two Negroes enter his company's place of business on the date in question and participate in the activities testified to by Miss Hawkins; one of them he identified as defendant Hawkins. Another employee, Sharon Wedlund, noticed two men enter the office. They ordered the bookkeeper (Miss Hawkins) to get all the money from the cash drawers and from the safe; she likewise identified defendant Hawkins who was armed with a shotgun. There was other evidence of an incriminating nature which need not be recounted.

Hawkins' defense was an alibi. His brother testified that Hawkins was with him at another address far removed from the scene of the crimes at the time of their commission. As for Walters, witnesses were called whose testimony challenged the identifications of the prosecution witnesses. Much is made of this in the brief filed by Walters; he was variously identified as to height and weight, and different descriptions were given of the clothing he wore.

We consider first the matter of insufficient identification urged by both appellants—in Hawkins' case, only as to the assault upon the victim Shellmire. ■ Repeatedly it has been held that "in order to sustain a conviction it is not necessary that the identification of the accused as the perpetrator of the crime be made positively or in a manner free from all inconsistencies. It is the function of the jury to pass upon the strength or weakness of the identification and the uncertainties of the witnesses in giving their testimony." (*People* v. *Mahoney,* 146 Cal.App.2d 485, 498-499 [304 P.2d 73].) The issue being accordingly one of fact, the jury's determination in that regard is binding upon this court. (*People* v. *Johnson,* 210 Cal.App.2d 273, 276 [26 Cal.Rptr. 614].) ■ While the above rules are generally concerned with identification resulting from use of the sense of sight, no

104

distinction is made when the identification occurs through the sense of hearing. In *People* v. *Horace,* 127 Cal.App.2d 366, 369 [273 P.2d 923], quoting from *People* v. *Lorraine,* 28 Cal. App.2d 50 [81 P.2d 1004], it is said: " 'The identity of the person may be established by proof of recognition of his voice, *or by other circumstances which satisfactorily indicate the identity of the individual.'* " As to appellant Walters, his connection with the assault on Mr. Shellmire was satisfactorily established by the latter's testimony that his assailant, contemporaneously with the striking from behind, uttered a statement previously made by Walters while then under the victim's visual observation. As for appellant Hawkins' complicity in the same offense, while there is no evidence indicating that it was he who struck the victim, it was satisfactorily established that his codefendant did the striking; therefore Hawkins was equally guilty as a principal which includes "All persons concerned in the commission of a crime" and specifically those who "aid and abet in its commission." (Pen. Code, § 31.) Whether one has aided and abetted in the commission of a crime is a factual question for the jury determinable from all the circumstances proved (*People* v. *Silva,* 143 Cal.App.2d 162, 169 [300 P.2d 25]); and among the factors which may be considered in making such determination is the presence of the accused (other than the actual perpetrator) at the scene of the crime and his conduct afterwards. (*People* v. *Fleming,* 191 Cal.App.2d 163, 168 [12 Cal.Rptr. 530].) Not only was there evidence that both appellants were together during the commission of the robbery, but there was also proof that they were in each other's company two days later.

 The next point, advanced by Walters singly, relates to the asserted adverse effect of a newspaper article published during the course of the trial which, after identifying appellants by name, made reference to their participation in another crime and the pronouncement of sentence upon their conviction thereof. It was suggested by Walters' trial counsel, upon motion for a mistrial (outside the jury's presence), that the article "must have been read" by some of the jurors because of the paper's general circulation in the area. None of the jurors, upon inquiry by the court, indicated that he had read the article. Nevertheless it is argued that such indication was given en masse, and not individually, by the nodding of heads in the negative and by the failure of any juror to raise his hand (as directed by the court) if he had knowledge of the article's contents; if each juror, says Walters, had been

asked to verbalize his answer, the so-called "crowd syndrome" might not have infected the en masse unverbalized response which was given. This approach, in our view, is highly speculative—certainly the record does not support the claim that it was error to deny the mistrial motion. Not only did the court admonish the jurors not to read any newspaper articles concerning the instant trial, but they were also instructed to decide the case only upon the oral and documentary evidence produced for their consideration. Too, out of an abundance of caution the court also asked counsel for each defendant if either wished any admonition additional to that theretofore given, and each agreed that the admonition was "adequate." Absent any showing that the jurors read the article, it must be presumed that they followed the trial court's admonition not to read any material relating to the instant case. (*People* v. *Santo*, 43 Cal.2d 319, 331 [273 P.2d 249].) Furthermore, there is nothing to indicate that the verdict was influenced in any manner, although the burden is on appellant to show such influence. (*People* v. *Torres*, 185 Cal. App.2d 168, 172 [8 Cal.Rptr. 135].)

The first of two assignments urged by Hawkins only states that the imposition of consecutive sentences violated section 654 of the Penal Code. He relies on *Neal* v. *State of California*, 55 Cal.2d 11 [9 Cal.Rptr. 607, 357 P.2d 839], wherein it is pointed out that if all the offenses are incident to one objective, the defendant may be punished for any one of them but not for more than one (p. 19). The assertion is then made that the striking of Mr. Shellmire was only incidental to one continuous course of conduct the object of which was robbery, and hence the multiple punishment reflected by the sentence imposed contravened the proscriptions of section 654. The problem turns on whether the robbery and the assault involved a single indivisible act: "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor." (*Neal* v. *State of California, supra*, p. 19.) In *People* v. *Houghton*, 212 Cal. App.2d 864 [28 Cal.Rptr. 351], the facts were similar to those at bar; as here, the robbery was accomplished prior to the assault, and the court held that the trier of fact was warranted in concluding that the offenses were divisible transactions. However, the claim is without merit for the reason that section 654 proscribes double punishment and not double conviction; the trial court stayed execution of the sen-

tence on the second count (count IV) pending appeal and also provided that such stay become permanent upon the completion of the sentence on count III. Such procedure as applied to section 654 has had appellate approval in at least two cases (*People* v. *Jenkins,* 231 Cal.App.2d 928, 934-935 [42 Cal.Rptr. 373] ; *People* v. *Niles, supra,* 227 Cal.App.2d 749, 755-756).

 Equally without merit is Hawkins' final point that the trial court committed error in failing to define the terms "unlawful intent," "criminal intent," and "felonious." Initially, since the record reveals that trial counsel for both defendants expressed satisfaction with the instructions prior to their reading, the present contention is made for the first time on appeal. The following rule accordingly controls: "If the defendant wanted any additional instructions or any clarification thereof he should have made a request therefor. By his failure to do so he waived the right to complain of any such omission for the first time on appeal." (*People* v. *Robinson,* 180 Cal.App.2d 745, 752 [4 Cal.Rptr. 679].) Even if such request had been made below, it has been held that the trial court is not required to instruct on the meaning of ordinary language such as "feloniously," "unlawfully," and "fraudulent." (*People* v. *Potter,* 240 Cal.App.2d 621, 633 [49 Cal.Rptr. 892].) Appellant relies on *People* v. *Failla,* 64 Cal.2d 560 [51 Cal.Rptr. 103, 414 P.2d 39], where under the rather complicated facts of that case the failure to define the term "felony" was found to be reversible error, because, among other things, it was reasonably probable (two justices dissenting) that a result more favorable to defendant would have been reached absent the error in instructions. (Cal. Const., art. VI, § 13.) We do not have difficulty in the instant case since proof of Hawkins' guilt is overwhelming.

In accord with the order of the Supreme Court and directions contained therein, the judgments are modified to provide that the execution of sentence as to count IV be stayed pending appeal and service of sentence as to count III, such stay to become permanent upon completion of sentence as to count III. In all other respects the judgments are affirmed.

Wood, P. J., and Fourt, J., concurred.

A petition for a rehearing was denied January 7, 1969, and the petition of appellant Hawkins for a hearing by the Supreme Court was denied February 5, 1969.