[Crim. No. 27223. Second Dist., Div. Four. Jan. 30, 1976.]

In re LYNETTE G., a Person Coming Under the Juvenile Court Law.
CLARENCE E. CABELL, as Acting Chief Probation Officer,
Plaintiff and Respondent, v.
LYNETTE G., Defendant and Appellant.

## COUNSEL

Nasim Naick Elliott, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Kent L. Richland and Robert R. Anderson, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**KINGSLEY, Acting P. J.**—Lynette G. appeals from an order of the Juvenile Court, which order found that she is a person described by Welfare and Institutions Code section 602 because she committed a robbery (a violation of Pen. Code, § 211). She was found to be a ward of the court and placed on probation in her father's home. Miss G. contends that: (1) she was illegally detained and transported to the scene of the crime for an on-the-scene identification; and (2) the evidence is insufficient to show that she aided and abetted in the commission of the robbery.

For the reasons stated below we affirm the judgment.

Evidence presented at the juvenile court hearing established that, shortly before 3 p.m. on November 6, 1974, Frances Divine was walking toward her home in Lincoln Heights when a teen-age girl ran up to her and hit her two times over the head with a heavy object. Mrs. Divine was carrying her purse and a Bullock's shopping bag which contained a new purse she had just purchased. She had $31 in her wallet.

Mrs. Divine stared at the girl, who was holding Mrs. Divine's handbag up toward her chest. The blows were hard and Mrs. Divine started to

bleed. She was stunned. Mrs. Divine saw three other young black girls huddled together five feet away from the girl who had struck her.

The girl who struck Mrs. Divine took her purse and shopping bag and ran away with the other three girls. They ran across the street and up toward North Broadway.

Mrs. Divine called for help. Three men came out of a house across the street and chased the girls. As they ran, two of the girls, the one who struck Mrs. Divine,[1] and one of the other three girls, were fighting over Mrs. Divine's purse. Witnesses could not identify which of the other three girls was the one involved in the struggle. The girls threw the purses down and bystanders brought them back to Mrs. Divine. Her wallet was missing from her purse.

A neighbor of Mrs. Divine, Margaret Gurule, was waiting for her children to return from school when she witnessed the attack on Mrs. Divine. Mrs. Gurule saw all four girls run from the scene.

About 3 p.m., Los Angeles Police Officer John Munguia received a radio call concerning a possible robbery. He proceeded to the intersection of North Broadway and Avenue 19 and there observed Mrs. Divine being treated by ambulance attendants.

Officer Munguia interviewed Irma Martinez, who told him that four black females had just attacked Mrs. Divine and had run north on Avenue 19 toward North Broadway. She and several bystanders, who would not give their names, described the clothing worn by three of the four girls. Miss G.'s clothing was not described.

Officer Munguia searched the immediate area and observed four black females coming out of the parking lot of a bowling alley adjacent to a gas station. The clothing worn by three of them matched the descriptions of the clothing worn by three of the four girls who ran away.

The girls crossed over a small fence into the gas station parking lot. All four of the girls were carrying packages. Two of the girls, Nadine H. and Melody H. were barefoot. Nadine was carrying a pair of platform shoes in her hand. Lynette G. was carrying a brown paper sack containing two pairs of platform shoes.

---

[1] The testimony was that the girl holding the purse "was not in court." Other testimony shows that the actual assailant was not in the courtroom at the hearing where this testimony was given.

The girls were detained by Officer Munguia and brought back to the scene of the robbery, half a block away. Mrs. Gurule identified the four girls Officer Munguia brought back to the scene of the robbery as the same four girls she had seen run away. Other people at the scene identified the girls. The four girls were arrested and booked. They had only $4 in cash between them.

I

Lynette G. contends that she was illegally detained and transported to the scene of the crime for an on-the-scene identification.

 It is well established that a temporary detention may be justified by circumstances falling short of probable cause to arrest a suspect. (*People* v. *Harris* (1975) 15 Cal.3d 384, 388 [124 Cal.Rptr. 536, 540 P.2d 632]; *People* v. *Mickelson* (1963) 59 Cal.2d 448, 450 [30 Cal.Rptr. 18, 380 P.2d 658].) "A police officer may stop and question persons on public streets, . . . when the circumstances indicate to a reasonable man in a like position that such a course of action is called for in the proper discharge of the officer's duties. [Citations.] The good faith suspicion which warrants an officer's detention of a person for investigative reasons is necessarily of a lesser standard than that required to effect an arrest. [Citation.] Where there is a rational belief of criminal activity with which the suspect is connected, a detention for reasonable investigative procedures infringes no constitutional restraint. [Citation.]" (*People* v. *Flores* (1974) 12 Cal.3d 85, 91 [115 Cal.Rptr. 225, 524 P.2d 353]; *People* v. *Harris, supra,* 15 Cal.3d at pp. 388-389.)

 We conclude that Officer Munguia had rational grounds for believing that Miss G. was one of the four girls involved in the robbery of Mrs. Divine. Four girls had been at the scene of the robbery; four girls ran away together; four girls were seen together, shortly after the robbery and in its immediate vicinity; three of the girls admittedly fitted the description of three of the girls at the scene of the crime and in the group that had run away; the fourth girl, although identified only by her race, sex and age, could quite reasonably be detained in order to discover whether she was one of the original group or a late joiner, replacing one of the original group. The facts of Miss G.'s race, sex and age, although not by themselves enough to support an ultimate charge of complicity, were enough to arouse a rational suspicion of complicity sufficient to justify, if not to require, detention and further investigation. Contrary to the intimation in the dissent, the result would be the same if all four girls

originally involved had been Caucasian. The racial element had, and has, no significance other than that it included, rather than excluded, Miss G. from being a potential associate of the three identifiable girls.

As to whether the transporation of the four girls back to the scene of the crime for identification by the victim and other witnesses was legal, we believe the recent Supreme Court case of *People* v. *Harris, supra,* is dispositive. In *Harris,* the victims' home was burglarized. The victims gave a description of one of the suspects as "male Caucasian, dark hair, moustache, about 5'8" tall, about 150 pounds, wearing a light cardigan sweater and dark trousers." Investigating police spotted the defendant as approximating the description furnished by the victims, three blocks away from the burglary. The suspects were stopped and interrogated separately. Each gave conflicting stories and both appeared nervous. The suspects were searched, handcuffed and placed in the back of a police car. Without asking the suspects' consent, the officers drove the suspects back to the scene of the crime for possible identification by the victims. The victims were unable to identify either suspect. While the officers were interrogating the suspects another officer noticed that defendant's shoes had soles similar to a shoe that had left a footprint found at the point of entry into the house. The suspects were than placed under arrest. Further investigation revealed that the burglar or burglars had removed some change from a piggy bank as well as a folded $10 bill and a $1 silver certificate from a jewelry box. An inventory search conducted incidentally to the suspects' booking disclosed a $1 silver certificate in defendant's wallet and a folded $10 bill in his companion's wallet. Defendant, contending that his detention and subsequent conveyance to the victims' residence were unlawful, moved to suppress the currency together with evidence of the matching shoeprint. The motion was denied and the evidence (shoeprint and currency) introduced at trial formed the major basis for defendant's conviction. The California Supreme Court held that although the detention was lawful the police procedures used to transport the suspects back to the scene of the crime violated defendant's constitutional rights and reversed the conviction.

Although the Supreme Court ruled that the transport was illegal under those factual circumstances, it was careful to point out that it could conceive of factual situations in which it would be reasonable to transport a suspect to the scene of the crime for possible identification. (*People* v. *Harris, supra,* 15 Cal.3d at p. 391; cf., *People* v. *Courtney* (1970) 11 Cal.App.3d 1185 [90 Cal.Rptr. 370] (reasonable to transport—hostile crowd endangered police officer's safety).) In fact, the court stated that if

"the victim of an assault or other serious offense was injured or otherwise physically unable to be taken promptly to view the suspect, or a witness was similarly incapacitated, and the circumstances warranted a reasonable suspicion that the suspect was indeed the offender, a 'transport' detention might well be upheld. Similarly, the surrounding circumstances may reasonably indicate that it would be less of an intrusion upon the suspect's rights to convey him speedily a few blocks to the crime scene, permitting the suspect's early release rather than prolonging unduly the field detention." *People* v. *Harris, supra,* 15 Cal.3d at p. 391. ■ As the Supreme Court states where, as here, the victim is injured and physically unable to be taken promptly to view the suspects, the police do not infringe upon the suspects' (Lynette G.'s) constitutional rights when they transport the suspects speedily a half block to the scene of the crime for immediate identification by the victim and other witnesses. The detention and transportation to the scene of the crime were therefore lawful.

## II

Lynette G. also contends that the evidence is insufficient to show that she aided and abetted in the commission of the robbery.

■ Whether a person has aided and abetted in the commission of a crime ordinarily is a question of fact. (*People* v. *Herrera* (1970) 6 Cal.App.3d 846, 852 [86 Cal.Rptr. 165]; *People* v. *Morga* (1969) 273 Cal.App.2d 200, 207 [78 Cal.Rptr. 120]; *People* v. *George* (1968) 259 Cal.App.2d 424, 429 [66 Cal.Rptr. 442].) Consequently, " 'all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it.' " (*People* v. *Moore* (1953) 120 Cal.App.2d 303, 306 [260 P.2d 1011].)

■ In order to hold Lynette G. as an aider and abettor it must be determined whether she, in any way, directly or indirectly, aided the perpetrator, with knowledge of the latter's wrongful purpose. (*People* v. *Villa* (1957) 156 Cal.App.2d 128, 134 [318 P.2d 828]; *People* v. *Fleming* (1961) 191 Cal.App.2d 163, 168 [12 Cal.Rptr. 530]; *People* v. *Tambini* (1969) 275 Cal.App.2d 757, 765 [80 Cal.Rptr. 179].)

■ Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense. (*People*

v. *Hawkins* (1968) 268 Cal.App.2d 99, 104 [73 Cal.Rptr. 748]; *People* v. *Perryman* (1967) 250 Cal.App.2d 813, 820 [58 Cal.Rptr. 921]; *People* v. *Fleming, supra; People* v. *Durham* (1969) 70 Cal.2d 171, 181 [74 Cal.Rptr. 262, 449 P.2d 198], cert. den., 395 U.S. 968 [23 L.Ed.2d 755, 89 S.Ct. 2116] and cert. den., 406 U.S. 971 [32 L.Ed.2d 671, 92 S.Ct. 2416]; *People* v. *Moore, supra*.) In addition, flight is one of the factors which is relevant in determining consciousness of guilt. (*People* v. *Mulqueen* (1970) 9 Cal.App.3d 532, 543 [88 Cal.Rptr. 235].)

Testimony by witnesses at the trial disclosed that Miss G. was present at the scene of the crime and had fled with the perpetrator and two others after the crime had been committed and was still in their company shortly thereafter. ▮ Although flight, in and of itself, may be explained by a desire merely to disassociate oneself from an unexpected criminal activity, the trial court was not required to adopt that view; it could, reasonably, have concluded that had Miss G.'s flight been from fear of an unjustified charge of involvement, she also would have immediately disassociated herself from the other three girls.

▮ On the record before us, we cannot say that the trial court erred in finding that Lynette G. had aided and abetted the robbery of Mrs. Divine.

The order appealed from is affirmed.

Dunn, J., concurred.

**JEFFERSON (Bernard), J.**—I dissent. The majority upholds an adjudication by the juvenile court that Lynette G. committed the criminal offense of robbery in violation of Penal Code section 211. The majority rejects the two contentions made by Lynette: (1) that she was illegally detained and transported to the scene of the crime for an on-the-scene identification; and (2) that the evidence is insufficient to establish that she aided and abetted another minor, Melody H., who was the actual perpetrator of the robbery. It is my opinion that both of the contentions of Lynette are valid and that the juvenile court's adjudication of guilt ought to be reversed.

The facts are not in dispute. At about 3 p.m. on November 6, 1974, Frances Divine was walking near her home when a black teenage girl ran up to her, hit her two times over the head with some heavy object, and grabbed her purse and a package which contained a new purse

which Mrs. Divine had just bought. A minor, Melody H., turned out to be the perpetrator. Mrs. Divine began hollering for help and several persons in the vicinity, including Mrs. Divine, saw three other black teenage girls together about five feet from Mrs. Divine. When Mrs. Divine started hollering for help, Melody H. and the other three girls all started running in the same direction. The two purses were dropped when some men gave chase to the running girls. The two purses were brought back to Mrs. Divine, and her wallet with $31 was missing. The $31 was made up of a $20 bill, a $10 bill and a $1 bill.

The police were called and when the officers arrived, descriptions were given of three of the four girls. One girl was described as wearing a black jacket. A second was described as wearing a white pants suit and a black turban. A third was described as wearing a red pants suit with a yellow blouse. There was no description given of the fourth girl. Within 15 minutes from the time the police officers received the call, they observed four black girls walking from a parking lot of a bowling alley adjacent to a gas station. This was about a one-half block distance from the scene of the crime. One of the four girls, who turned out to be the perpetrator of the robbery, Melody H., was wearing a black jacket. A second girl was wearing a white pants suit and she turned out to be Lewanda B. A third girl was wearing a yellow blouse and red pants, and she turned out to be Nadine H.

The fourth girl with these three was Lynette G. The officers had received no description of the fourth girl other than that all four girls were black. Nevertheless, the officers detained all four girls without asking any questions, placed them in the back of the police car, and transported them back to the scene for identification by the victim and other witnesses. A Mrs. Margaret Gurule looked in the police car and made an identification of the four girls.

At the juvenile court hearing, Mrs. Divine was unable to identify any of the four girls. Mrs. Gurule testified at the hearing and identified Lynette G. as one of the four girls present at the robbery scene, but stated that Lynette was not the girl who struck Mrs. Divine and grabbed her purses.

To sustain an adjudication by the juvenile court that Lynette G. committed a robbery of Mrs. Divine as an aider and abettor of Melody H., the perpetrator, is to accept the theory of "guilt by association." But even worse, the theory of guilt by association is compounded in the

instant case because of its racial application. This is a case in which Lynette G., a black teenage girl, because she is seen by police officers in the company of three other black girls who were described as suspects specifically by the clothes they were wearing, became a *suspect* to a robbery in the minds of the police officers, *solely* because she was a *black* teenage girl.

Since Lynette G. had not been identified as a suspect in the robbery by any information given to the police officers prior to their seeing the four girls together, the information given to the police officers that there were four black girls involved, with descriptions of clothing to identify three, is simply insufficient for the officers to form a rational basis that Lynette G. was the fourth girl present at the scene of the robbery. Hence, there was an inadequate and insufficient justification for detaining her and taking her back to the scene for identification by witnesses.

It is obvious that, in detaining Lynette G. and taking her back to the scene, the police officers were acting purely and simply on the basis that she was a black girl and was seen in the company of three girls that met the description of the three black girls that were described to the police. This conclusion follows from the testimony at the hearing given by Mrs. Gurule to the effect that the officers brought her to the police car and simply asked: Are these the four girls? The detention of Lynette and her transportation with the other three girls back to the scene, with the type of inquiry which the police officers made of Mrs. Gurule, established, without question, an impermissibly suggestive identification, in addition to an unconstitutional detention and transportation.

That Lynette became a "suspect" in the eyes of Police Officer John Munguia, *solely* because she was a young black female, is fortified by the officer's own testimony. Officer Munguia testified that when he brought the four girls back to the scene, he asked Mrs. Gurule if she saw the girls who had attacked the victim. This question made an assumption, obviously false, that four girls had attacked the victim. Upon getting a "yes" answer to this question, he said he took down Mrs. Gurule's name and then asked: "Are *these girls* you see in the back of my police car, are *these* the *girls*?" (Italics added.)

The conduct of Officer Munguia constitutes an unambiguous and clear-cut suggestion to an identifying witness to identify all four girls as being involved in the robbery of Mrs. Divine. There was no question posed by Officer Munguia to Mrs. Gurule that gave her any opportunity

to say that she recognized the girl who actually struck Mrs. Divine and grabbed her purses, nor to say that she recognized one or two girls but not the others as being involved in the crime. The officer's conduct, therefore, clearly suggested that he had the four persons involved and wanted the witnesses to identify the four as the culprits.

The juvenile court adjudication of Lynette as having participated in a vicious robbery is especially odious because her detention and transportation are predicated solely on the fact that she was a young black female. Any young black girl found in the company of the other three girls who were legitimately suspects because of the specific descriptions given by the witnesses, based on the clothing worn by these three girls, would have been deemed a fourth suspect in the eyes of Officer Munguia. Thus, any one of thousands of young black girls who live in the Los Angeles area would have met the only description given by the witnesses of the fourth girl, namely, that she was a black girl.

This court should not condone a rule of law to the effect that being a female, a minor, and of a certain racial identity is sufficient to make one a suspect—sufficient to justify police conduct in detaining and transporting such an alleged suspect back to the scene of the crime. The majority indicates that it would have reached the same result had all four girls been Caucasian. But such a result is still impermissible. Being a female, a minor, and Caucasian, constitute an insufficient description to make one a *suspect* just as much as does being a female, a minor, and black.

The case at bench, therefore, represents—not only an improper *transportation* as revealed in *People* v. *Harris* (1975) 15 Cal.3d 384 [124 Cal.Rptr. 536, 540 P.2d 632]—but also an improper *detention* in violation of Lynette's Fourth Amendment rights of liberty and personal freedom.

The majority takes the view that *Harris* is dispositive of Lynette's contention that she was illegally detained and transported to the scene of the crime for an on-the-scene identification. But the factual situation presented in the case at bench is totally different from that presented in *Harris.* In *Harris,* after a home was burglarized and a description given of one of the suspects, police officers spotted two individuals, including the *defendant* who approximated the description given by the victim. Lynette, in the instant case, did not meet any such description given by witnesses. The two persons in *Harris* were stopped and interrogated separately. Each gave conflicting stories and both appeared nervous. The two were then driven back to the scene of the crime.

In *Harris,* the court held that the original detention of defendant was proper. Although a temporary detention of a person by police officers may be justified by circumstances that fall short of constituting probable cause to arrest such person *(People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658]), there must be a good faith suspicion on the part of the detaining officer that the person detained is connected with criminal activity. *(People* v. *Flores* (1974) 12 Cal.3d 85 [115 Cal.Rptr. 225, 524 P.2d 353].) There was such good faith suspicion in *Harris* that justified the initial detention of defendant. But in the instant case, the fact that a person is young, female and black does not meet the test of providing a police officer with any rational belief that such person was connected with criminal conduct.

*Harris* held, however, that defendant's transportation to the scene of the crime constituted a violation of his constitutional rights. In the case at bench, the majority justifies the police officers' detention and transportation of Lynette back to the scene of the robbery on the basis of a dictum contained in *Harris* in which the court said it could "conceive of factual situations in which it might be quite reasonable to transport a suspect to the crime scene for possible identification." *(Harris, supra,* 15 Cal.3d 384, at p. 391.) One of the factual situations suggested for a transportation of a suspect to the scene of the crime for possible identification is where the victim of an assault or other serious offense was injured or physically unable to be taken promptly to view the suspect. According to the majority, the instant case fits this dictum of *Harris.*

But the *Harris* dictum also stated a second necessary concomitant to the fact of the victim being injured or otherwise physically unable to be taken to view the suspect. This second requirement is that, if "the circumstances warranted a reasonable suspicion that the suspect was indeed the offender, a 'transport' detention might well be upheld." *(Harris, supra,* 15 Cal.3d 384, at p. 391.) The second part of the *Harris* dictum clearly imposes, as a condition to the validity of any transportation of an alleged suspect back to the crime scene for identification, that the circumstances warrant a "reasonable" suspicion that the alleged suspect is *unmistakably* the perpetrator of the crime.

It is submitted that a description of a person as being a *young black girl* does not warrant a reasonable suspicion that any person meeting that description is a suspect in the first place, let alone a suspicion that that person is, "indeed the offender." *Harris,* therefore, should be considered as dispositive of the fact that, in the instant case, Lynette's detention and

transportation to the scene of the robbery constituted a violation of her Fourth Amendment constitutional rights to be free from an arbitrary detention and transportation, as was the holding in *Harris* itself—that the defendant's transportation constituted a violation of such defendant's Fourth Amendment rights.

In *Harris,* incriminating evidence against defendant was discovered following the transportation detention, such as occurred in the instant case by an on-the-scene identification of Lynette as one of the four girls present at the robbery. The result in the case at bench should be the same as that reached in *Harris*—that "[i]t is a fundamental principle in our jurisprudence that an illegal police procedure cannot be justified by its fruits. [Citations.]" (*Harris, supra,* 15 Cal.3d 384, at p. 392.)

Since, in my view, the evidence clearly shows an illegal detention and transportation which justifies reversal of the trial court's adjudication of Lynette's guilt, we should not reach the issue of the sufficiency of the evidence. Nevertheless, it is also my view that the evidence is insufficient to support the adjudication of guilt.

There is no question about the standard of appellate review on this issue. If there is substantial evidence to support the trial court's judgment, it must be affirmed. (*People* v. *Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321].) In looking at the evidence, all inferences and intendments must be considered in favor of the trial court's judgment. (*In re Roderick P.* (1972) 7 Cal.3d 801 [103 Cal.Rptr. 425, 500 P.2d 1].) The question, then, is whether there is substantial evidence to support a finding that Lynette was an aider and abettor of Melody H., who was the actual perpetrator of the robbery.

An accused aids and abets another in the commission of a crime if "the accused in any way, directly or indirectly, aided the perpetrator or advised and encouraged commission of the offense with knowledge of the latter's wrongful purpose." (*People* v. *Butts* (1965) 236 Cal.App.2d 817, 836 [46 Cal.Rptr. 362].) Although "[n]either presence at the scene of a crime, nor failure to take steps to attempt to prevent a crime, establish that a person is an aider or abettor" (*Pinell* v. *Superior Court* (1965) 232 Cal.App.2d 284, 287 [42 Cal.Rptr. 676]), "[a] person present when a crime is committed who engages in conduct aiding and assisting the perpetrator with knowledge of the latter's criminal intent, aids and abets in its commission." (*People* v. *Herrera* (1970) 6 Cal.App.3d 846, 852 [86 Cal.Rptr. 165].)

The evidence which the majority finds sufficient to support the trial court's determination that Lynette aided and abetted the perpetrator of the robbery constitutes the following: (1) that Lynette was present at the scene of the crime; (2) flight after the commission of the offense, along with the perpetrator and two others; and (3) that she was later seen in the company of the perpetrator.

The majority concedes that Lynette committed no overt act during the robbery which could be interpreted as aiding or lending any encouragement to the perpetrator of the robbery.

Just as mere presence at the scene of a crime does not make one an aider and an abettor, the addition of the fact of flight under the circumstances involved in the case at bench, adds no support to the trial court's finding of aiding and abetting. The record shows that Lynette fled after the victim started hollering for help upon being robbed. Under these circumstances, flight does not provide a rational inference that it indicates a consciousness of guilt on the part of Lynette. Considering that the perpetrator was a young black female, any young minor of the same racial identity being nearby would have fled, not because of any consciousness of guilt, but because of a consciousness that, under the circumstances, one was likely to be arrested irrespective of innocence.

Other circumstances involved in the instant case need to be mentioned. There was no testimony by Officer Munguia that there was any furtive or other actions by Lynette when he saw her within 15 minutes after the alleged crime was committed that were of a nature such as occurred in the *Harris* case. Officer Munguia also testified that, upon the arrest and booking of the four girls, one had $4 on her. But there is no evidence as to which one of the four girls had the $4 or whether the $4 was made up of bills, change, or a combination thereof. There is thus no testimony that Lynette had any of the fruits of the robbery, which would be a factor tending to indicate an aiding and abetting of the perpetrator, although it is conceded that one who aids and abets does not necessarily have the intention of enjoying the fruits of the crime. (See *People* v. *Terry* (1970) 2 Cal.3d 362 [85 Cal.Rptr. 409, 466 P.2d 961].)

It is my view that, on the basis of the evidence revealed by the record in this case, there is a lack of substantial evidence to support the trial court's determination that Lynette was an aider and abettor of Melody H. in the perpetration of the robbery of Mrs. Divine.

The burden of proof in the instant case is not without consequence. Although the question before the appellate court is not whether guilt is established beyond a reasonable doubt (*People* v. *Redmond* (1969) 71 Cal.2d 745 [79 Cal.Rptr. 529, 457 P.2d 321]; *People* v. *Hillery* (1965) 62 Cal.2d 692 [44 Cal.Rptr. 30, 401 P.2d 382]), the appellate court must look to the applicable burden-of-proof-standard in determining the sufficiency of the evidence to sustain the trial court's finding. " '[T]he appellate court is required to determine whether a reasonable trier of fact could have found that the prosecution sustained its burden of proving the defendant guilty beyond a reasonable doubt. [Citations.]' " (*In re Roderick P.* (1972) 7 Cal.3d 801, 808-809 [103 Cal.Rptr. 425, 500 P.2d 1].) Although this is a juvenile court proceeding, the same beyond-a-reasonable-doubt burden of proof applies as it does in the general criminal law. In light of the evidence contained in the record before us, no reasonable trier of fact could have found that the prosecution had sustained its burden of proving beyond a reasonable doubt that Lynette G. had committed robbery.

I would reverse the judgment.

Appellant's petition for a hearing by the Supreme Court was denied March 24, 1976.