Filed 4/9/13  P. v. Archuleta CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D060757 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. Nos. JCF26761) |
| MARTIN ARTHUR ARCHULETA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Matias R. Contreras, Judge.  (Retired Judge of the Imperial Sup. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Martin Arthur Archuleta appeals a judgment entered after a jury convicted him of arson.  He asserts the trial court erred by denying his motion for a judgment of acquittal because the evidence did not show he aided and abetted his codefendant and the only evidence connecting him to the crime was uncorroborated accomplice testimony.  We reject his contentions and affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

An information was filed charging Archuleta and Darryl Elmore with two counts of arson, and Luis Vazquez with one count of arson. The first count pertained to a fire that occurred on February 15, 2011, on property located in Brawley, California. (All further dates are in 2011.) The second count pertained to a fire the next day on property located in El Centro. Archuleta's case was severed from those of his codefendants'.

Elmore testified that he, Archuleta and Vazquez were friends and that they often went out into the hayfields to "hang out" and drink. On the evening of February 15, Elmore invited Archuleta into the fields, planning to surprise him by lighting some fires. As Elmore drove, he saw a haystack and decided to light it on fire to show Archuleta "something kind of out of the ordinary." Elmore got out of the car and Archuleta got into the driver's seat for them to "get away." Elmore, however, claimed that Archuleta did not know what he had planned.

Elmore lit a haystack on fire and Archuleta drove them away with the car lights off. Elmore stated that the car lights were off because he did not want anyone to see them. That evening, Elmore also lit a tree and another haystack on fire. Again, Archuleta drove them away from the scenes with the car lights off.

The following evening, Elmore had dinner with Archuleta and Vazquez. After dinner, Elmore drove everyone in his car to Vazquez's home where the men continued drinking. At some point, Archuleta said to Elmore, "Let's go do your wonderful work." When Elmore asked for clarification, Archuleta said, "Let's go light the haystack fires."

After Elmore agreed, he drove everyone in his car to a location where he lit a haystack on fire. Either Archuleta or Vazquez then drove everyone away with the car lights off so that people in a nearby home would not see them. The men drove to another location where Elmore got out of the car and lit another haystack on fire. Vazquez drove the men away with the car lights off, but the car got stuck in a ditch. When the police arrived at the scene, the men claimed to be onlookers.

The jury also considered other evidence, including two recorded interviews with Archuleta conducted on February 16. Following the prosecution's case in chief, the trial court denied Archuleta's motion for a judgment of acquittal. The jury ultimately found Archuleta guilty on count two, pertaining to the fires on February 16, on a theory of aiding and abetting; however, it acquitted him of count one pertaining to the fires on February 15. The trial court sentenced Archuleta to the lower term of 16 months in prison. Archuleta timely appealed.

## DISCUSSION

### I. *General Legal Principles*

"[A]ll persons concerned in the commission of a crime . . . whether they directly commit the act constituting the offense, or aid and abet in its commission . . . are principals in any crime so committed." (Pen. Code, § 31, undesignated statutory references are to this code.) Accordingly, an aider and abettor "shares the guilt of the actual perpetrator." (*People v. Prettyman* (1996) 14 Cal.4th 248, 259.) The mental state necessary to support a conviction for aiding and abetting, however, is different from the mental state necessary to convict the actual perpetrator. (*People v. Mendoza* (1998) 18

3

Cal.4th 1114, 1123.) While the perpetrator must have the requisite intent to establish the crime charged, an aider and abettor need not personally harbor such an intent; rather, he is liable as an aider and abettor if he acts with knowledge of the criminal purpose of the perpetrator and with the intent of committing, or of encouraging or facilitating the commission of the offense. (*People v. Beeman* (1984) 35 Cal.3d 547, 560.) Neither presence at the scene of a crime nor knowledge of but failure to prevent it is sufficient to establish aider and abettor liability. (*People v. Durham* (1969) 70 Cal.2d 171, 181.) However, mere presence at the scene of a crime may be considered with other meaningful evidence, such as companionship and conduct before and after the offense, in assessing aider and abettor liability. (*In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1094.)

A conviction cannot be based only on accomplice testimony. (§ 1111.) There must be sufficient corroborating evidence that "shall tend to connect the defendant with the commission of the offense; and the corroboration is not sufficient if it merely shows the commission of the offense or the circumstances thereof." (*Ibid*.) "To determine if sufficient corroboration exists, we must eliminate the accomplice's testimony from the case, and examine the evidence of other witnesses to determine if there is any inculpatory evidence tending to connect the defendant with the offense." (*People v. Falconer* (1988) 201 Cal.App.3d 1540, 1543.)

"[C]orroborative evidence is sufficient even though slight and entitled to little consideration when standing alone [citation]." (*People v. Wood* (1961) 192 Cal.App.2d 393, 396; *People v. Frye* (1998) 18 Cal.4th 894, 966 ["Corroboration need only be slight."].) "Only a portion of the accomplice's testimony need be corroborated, and the

4

corroborative evidence need not establish every element of the offense charged. [Citation.] All that is required is that the evidence '"'"connect the defendant with the commission of the crime in such a way as may reasonably satisfy the jury that the [accomplice] is telling the truth."'"' [Citation.]" (*People v. DeJesus* (1995) 38 Cal.App.4th 1, 25.)

When reviewing a claim the trial court erred by denying a motion for acquittal under section 1118.1, we consider only the evidence in the record at the time the motion was made. (*People v. Cole* (2004) 33 Cal.4th 1158, 1213.) We independently examine the evidence to determine whether it is sufficient to support the conviction. (*Ibid.*)

## II. *Analysis*

Archuleta asserts there was insufficient evidence to support his conviction for the fires Elmore lit on February 16 because the corroborative evidence and reasonable inferences therefrom were not sufficient to support a finding he intended to aid and abet Elmore or that he did in fact promote, encourage, or instigate Elmore's commission of those fires. We reject his contention.

Elmore's testimony established that Archuleta promoted, encouraged, or instigated Elmore's commission of the February 16 fires when he told Elmore, "Let's go do your wonderful work," explaining that he referred to setting haystacks on fire. Accordingly, we turn to the remaining evidence to ascertain whether independent evidence corroborated Elmore's testimony.

Archuleta admitted that he knew about the February 15 fires because he had been hanging out with Elmore when Elmore started them. He also admitted that he and

5

Elmore were longtime friends and that he was with Elmore on February 16 when Elmore set both the haystack fires.

The first haystack fire occurred sometime after 8:00 p.m. when a witness saw the fire and a Toyota Camry speeding away with its lights off. A screen print of Archuleta's Facebook page contained a comment posted through a Blackberry at 8:45 p.m. that day stating that "Darryl Elmore is a fucking legend." Archuleta owns a Blackberry and showed a deputy sheriff a photograph he took with it depicting the first haystack fire on February 16.

The jury could have reasonably concluded that Archuleta made the comment that appeared on his Facebook page because Facebook accounts are password protected. Moreover, the comment along with the photograph of the fire on Archuleta's Blackberry suggest that Archuleta was chronicling the events of the evening. Additionally, when the men were caught during the second haystack fire, they all used the same alibi that they were simply bystanders. This further supported Archuleta's complicity in Elmore's criminal conduct. (*People v. Santo* (1954) 43 Cal.2d 319, 327 [false and contradictory statements of a defendant, including attempts to give a false alibi, are corroborative evidence].)

This evidence sufficiently connected Archuleta to the crime in such a way to satisfy the jury that Elmore was telling the truth when Elmore testified that Archuleta encouraged him to burn haystacks on February 16. (*People v. DeJesus*, *supra*, 38 Cal.App.4th at p. 25.) Although Archuleta complains there is no evidence showing Elmore knew that he made the Facebook comment or took the photograph, such

6

knowledge is not necessary as the question presented is whether these acts corroborated Elmore's testimony. Here, independent of Elmore's testimony, there was ample evidence from which a reasonable jury could conclude that Archuleta promoted, encouraged, or instigated Elmore's commission of the February 16 fires. Accordingly, the trial court did not err when it denied Archuleta's motion for acquittal.

DISPOSITION

The judgment is affirmed.


McINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.