Filed 8/23/24  P. v. Zamora CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, | B324747 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA193636) |
| v. | |
| JAVIER ZAMORA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Thomas Rubinson, Judge.  Affirmed.

Steven S. Lubliner, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Scott A. Taryle and Daniel C. Chang, Deputy Attorneys General, for Plaintiff and Respondent.

# I. INTRODUCTION

In 2000, a jury convicted defendant Javier Zamora of attempted murder, assault with a firearm, attempted second degree robbery, and assault by means of force likely to produce great bodily injury. The jury also found true criminal street gang and firearm allegations. In 2021, defendant filed a petition for resentencing of his attempted murder conviction pursuant to former Penal Code section 1170.95[1]. The trial court denied the petition and defendant appeals. We affirm.

# II. BACKGROUND

## A. *Defendant's Underlying Convictions*

The following background is taken from the unpublished opinion of a prior panel of this Division that heard the direct appeal from defendant's underlying convictions (*People v. Gallardo* (Oct. 11, 2001, B143091) [nonpub. opn.] (*Gallardo*))[2]:

---

[1] All further statutory references are to the Penal Code unless otherwise stated. Effective June 30, 2022, the Legislature renumbered section 1170.95 to section 1172.6 with no change in text. (Stats. 2022, ch. 58, § 10.) Further references will be to the statute's current section number only.

[2] Neither party contends the facts as recited in the prior appellate opinion do not accurately reflect the facts in the trial record in this matter. Accordingly, we set forth the facts from the prior opinion as context for defendant's claims. Below, we will set forth and address other facts from the record of defendant's underlying convictions as necessary.

"Hugo Cruz was a member of the Avenues gang. He had a history of selling drugs. On October 6, 1999, at 10:00 p.m., four other members of the Avenues gang, defendant Zamora, defendant [Roberto] Gallardo, Harold Riley, and Marvin Ponce[3] approached Cruz outside his apartment building, demanding money. When Cruz refused, the four men beat him, knocked him down, and kicked him. Defendant Zamora, Riley, and Ponce dragged Cruz into Cruz's apartment. While defendant Gallardo remained outside as a look-out, defendant Zamora, Riley, and Ponce continued to hit Cruz and ransacked the apartment. Two of the men brandished guns, stating they would kill Cruz. Cruz told them he had no money to give them. Cruz was then shot in the head and leg. The four men ran away.

"The police arrived at 10:30 p.m. Cruz locked the door and did not let them in. The police broke down the door with an ax in order to gain entry. They found Cruz somewhat dazed and covered with blood. The apartment was in a ransacked and bloody condition and the top of the toilet tank was resting on a stool. A baggie containing a small amount of white powder was found. When asked who did this to him, Cruz replied, 'I don't know why [Riley] did this.' Cruz was reluctant to talk to the police. He hesitated to be specific concerning the incident. He initially refused medical treatment at the scene, although, after

"3     We have reviewed the superior court file. Riley and Ponce were also charged. Riley has not been arrested. Pursuant to a plea agreement, Ponce, who was arraigned six months after defendants were arrested, was convicted of attempted murder in violation of sections 664 and 187, subdivision (a). Special allegations pursuant to sections 12022.7, subdivision (a) and 12022.5, subdivision (a)(1) were found true. He was sentenced to 13 years in state prison.

3

resisting, he allowed himself to be taken to the hospital. The information he gave the police had to be pried out of him, and he did not give details. Cruz stated four Avenues gang members whom he identified as Riley, defendant Zamora, Ponce, and a fourth person, whose name he did not know, came to his apartment and demanded money. When he told them he had no money, Riley and defendant Zamora produced handguns and threatened him. When he again refused to give them money, Riley and defendant Zamora shot him.

"On October 8, 1999, Cruz identified the four assailants, including defendants, from photographs in the Avenues gang mug book. He named Riley, defendant Zamora, and Ponce, but he could not remember defendant Gallardo's name. However, he refused to sign his name on the photographs he had identified.

"On October 30, 1999, Cruz was arrested for being a felon in possession of a firearm. The police interviewed him when he was in jail subsequent to the arrest. This interview took place within several days after Saturday, October 30, 1999, the day he was arrested. Cruz told the police the following. As he was leaving his apartment on October 6, 1999, Riley and Ponce arrived and demanded money. He told them he had no money to give them, and then defendants arrived. Riley, Ponce, and defendant Gallardo spoke together in whispers. Then they all started to hit him. They tried to put him in the trunk of their car, but he successfully resisted. In the apartment, Riley and Ponce pulled out guns. Riley said he was going to kill Cruz. Then Cruz was shot. They continued to fight with him. They insisted they wanted money and kept looking for money. They stole Cruz's wallet, which contained $80, rings, a gold chain, and a CD player. Cruz identified photographs of defendants, Riley,

4

and Ponce. He identified defendant Gallardo by name. Cruz stated he did not remember talking to the police on the night of the crime. On several occasions shortly after he had come home from the hospital, representatives from the gang told Cruz everything was fine and the gang would not bother him any more. Cruz believed the gang still wanted to kill him. Cruz denied the gang was trying to collect money from him for selling drugs.

"Gilberto Rodriguez witnessed the assault outside the apartment building. Rodriguez gave information to the police on October 7, 1999, when the police picked him up for truancy. Rodriguez never saw Cruz after October 6, 1999. Rodriguez was an Avenues gang member and knew defendants. He identified defendants as two of Cruz's assailants. He selected their pictures from a gang photo book. Rodriguez told the police that defendants, Riley, and Ponce beat and kicked Cruz. The four men dragged Cruz inside his apartment, while continuing to hit him. Defendant Gallardo then went back outside to watch the street. Rodriguez was worried the gang would retaliate against him and his family, because he had told the police the identity of the gang members who had assaulted Cruz." (*Gallardo, supra*, B143091.)

On appeal, defendant contended, among other things, there was insufficient evidence he intended to kill Cruz. A prior panel of this division rejected defendant's contention, holding, "Substantial evidence supports a finding defendant . . . possessed the required intent to kill Cruz both as the actual perpetrator and an aider and abettor. Defendant['s] . . . intent to kill can reasonably be inferred from the evidence of gun shots to Cruz's head and Cruz's October 6, 1999[,] statement to the police

5

identifying defendant . . . as one of the shooters.  This was substantial evidence defendant . . . directly committed the act constituting attempted murder."  (*Gallardo, supra*, B143091.)

B.    *Defendant's Section 1172.6 Petition*

On December 1, 2021, defendant filed a section 1172.6 petition for resentencing of his attempted murder conviction.  The trial court appointed counsel to represent him.  On May 26, 2022, the prosecution filed its response to defendant's petition.  On June 6, 2022, defendant filed his reply.  After argument by the parties, the trial court found defendant's petition made a prima facia showing that he was entitled to relief and set the matter for an order to show cause hearing.

On August 9, 2022, the prosecution filed a supplemental brief in opposition to defendant's section 1172.6 petition in which it asked the trial court to make an independent determination of the facts based on the evidence presented at the preliminary hearing and the trial.  It requested the court to take judicial notice of the record on appeal in *Gallardo, supra*, B143091 including but not limited to the appellate court opinion; the clerk's transcript, including the preliminary hearing transcript; and the reporter's transcript, all of which it submitted on a disc.

On October 11, 2022, the trial court held an evidentiary hearing on defendant's section 1172.6 petition.  At the outset of the hearing, the court stated it had read the trial transcript the prosecutor had provided on a disc and the parties' briefs on the evidence.[4]

---

[4]    The court did not expressly rule on the prosecution's request to take judicial notice of the record on appeal in *Gallardo,*

6

Defense counsel argued that Cruz's statements to the police that had been admitted at trial under Evidence Code section 1370 were inadmissible in a section 1172.6 evidentiary hearing because they were testimonial and violated his confrontation rights as explained in *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*) and *People v. Livingston* (2012) 53 Cal.4th 1145 (*Livingston*). Counsel did not specify the statements he believed were admitted under Evidence Code section 1370. It appears that at defendant's trial, the trial court admitted Cruz's statement to the police on October 6, 1999, under Evidence Code section 1240, and his statements to the police on October 8, 1999, and after October 30, 1999, under Evidence Code section 1370.[5]

---

*supra*, B143091. We infer, however, from the court's statement that it read the trial transcript and from the absence of any contrary indication that the court implicitly granted the prosecution's request.

[5] In his prior appeal, defendant challenged the court's admission of Cruz's statements to the police on October 8, 1999, and after October 30, 1999, under Evidence Code section 1370. The prior panel of this division held the court did not abuse its discretion in admitting the statements. (*Gallardo, supra*, B143091.) As for Cruz's statement to the police on October 6, 1999, defense counsel had conceded in defendant's trial that Cruz's statement "at the scene while he was—his wound was being tended by the paramedics probably can qualify as an excited utterance and a spontaneous statement"—i.e., that it was admissible under Evidence Code section 1240.

In connection with defendant's appellate claim that defense counsel was ineffective for failing to object to Cruz's out of court statements on the grounds that he was not unavailable to testify and admission of the statements violated his constitutional rights, the prior panel stated that Cruz's October 6, 1999,

7

The prosecutor argued that the right to confrontation as explained in *Crawford, supra*, 541 U.S. 36, was a trial right not implicated in a section 1172.6 evidentiary hearing. Defense counsel responded that a "Constitutional objection would not lie. . . . [¶] So I would be submitting on that point if we were talking about a constitutional objection at this hearing. I'm not. What I'm saying is that at the trial, [section] 1172.6 requires that the evidence that was admitted at trial still would be admissible under current law. That's what this section says. And what I'm saying is it's not admissible under current law at trial. Here it would be admissible. I submit on that point today."

The trial court stated it was conducting a de novo review of the evidence presented at trial. It then stated, "I believe that even without the testimony of Mr. Cruz, which was admitted per [Evidence Code section] 1370, even if you exci[s]e that, there would still be enough evidence here to convict [defendant] beyond a reasonable doubt based upon spontaneous statements made by Mr. Cruz to several officers at the scene" and Rodriguez's testimony. The court explained it was relying on Cruz's statements when Cruz was "bloody from being shot in a blood spattered apartment" and not Cruz's later statements "back at the station" that were "no longer spontaneous."

The trial court then discussed the evidence on which it relied. On October 6, 1999, Los Angeles Police Department (LAPD) Sergeant Stephen Cunningham took a spontaneous statement from a bloody and injured Cruz at the scene that he did not know "'why Sparky did this.'"

---

statement identifying defendant as one of the shooters would have been admissible under Evidence Code section 1240 even if Cruz had testified. (*Gallardo, supra*, B143091.)

8

LAPD officer Julio Duarte testified that Cruz said that men entered his apartment and demanded money.[6]  When he refused, two of the men produced handguns and threatened him.  When he again refused, he was shot.  The prosecutor asked if Cruz "indicate[d] who did this to him."  Officer Duarte responded that he recalled Cruz provided nicknames of two of the men who entered his apartment—"Sparky" and "possibly Chayo."  The third man was "Little Speedo's" brother.  These statements occurred "right after the crime happened," that is, on October 6, 1999.  The court believe Cruz's statements were excited utterances under Evidence Code section 1240.

Officer Perez interviewed Cruz at the crime scene.  Officer Perez described Cruz as "dazed" and "not quite all there."  Cruz told Officer Perez that he had been sitting in his living room when four of his friends entered and asked him for money.  When he responded that he did not have any money, two of his friends pulled out handguns and one of them began to shoot.  The court ruled that these statements "would be likely to be admitted" under Evidence Code section 1240.

The court noted that Officer Perez testified about further details of the crime Cruz had related to him—"who did it, and who did what."  The court ruled this statement was not

---

[6]     Officer Duarte was relating statements he heard a bleeding Cruz make outside his apartment on October 6, 1999, to LAPD officers Juan Perez and L. Thompson (first name not provided) who interviewed Cruz "about what had happened."

9

spontaneous because Officer Perez had to "pry" it out of Cruz, and it would not be proper for the court to consider it.[7]

The trial court then addressed Rodriguez's testimony. Rodriguez testified he saw defendant and Gallardo beat up Cruz outside Cruz's apartment. Defendant took Cruz's apartment keys from Cruz and opened Cruz's apartment. Defendant and two of his companions took Cruz inside Cruz's apartment; Gallardo waited outside as a lookout. While defendant and his two companions were inside Cruz's apartment, Rodriguez heard two "blows" that could have been gunfire. Defendant and his two companions left Cruz's apartment and rejoined Gallardo. All four fled on foot. Rodriguez identified defendant as "Chayo."[8]

The trial court found, based on Cruz's admissible statements and Rodriguez's testimony, that there was "sufficient evidence to prove this case under current law beyond a reasonable doubt." Accordingly, it denied defendant's petition for resentencing.

---

[7] The statement Officer Perez had to "pry" out of Cruz was as follows: Four of his friends entered his apartment and asked for money. When he said he did not have any, suspects one and two began to shoot and then fled. Cruz identified suspect one as "Sparky" and suspect two as "Chayo."

[8] At trial, Rodriguez identified defendant's nickname as "Child." Rodriguez identified defendant's gang name as "Chayo" in his preliminary hearing testimony. LAPD gang officer Elias Villasenor testified he learned defendant had the nickname "Child" or "Chayo" from a report.

## III.   DISCUSSION

A.   *Substantial Evidence*

Defendant contends the trial court erred in denying his section 1172.6 petition because substantial evidence does not support his attempted murder conviction under an aider and an abettor theory.  We disagree.

### 1.   Standard of Review

"In determining whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, ""we review the factual findings for substantial evidence and the application of those facts to the statute de novo."" [Citation.]" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.)  "'A substantial evidence inquiry examines the record in the light most favorable to the judgment and upholds it if the record contains reasonable, credible evidence of solid value upon which a reasonable trier of fact *could* have relied in reaching the conclusion in question. Once such evidence is found, the substantial evidence test is satisfied.  [Citation.]  Even when there is a significant amount of countervailing evidence, the testimony of a single witness that satisfies the standard is sufficient to uphold the finding.' [Citations.]" (*People v. Fuiava* (2012) 53 Cal.4th 622, 711.)

### 2.   Legal Principles and Analysis

"'A "person aids and abets the commission of a crime when he or she, acting with (1) knowledge of the unlawful purpose of

11

the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of the offense, (3) by act or advice aids, promotes, encourages or instigates, the commission of the crime."' [Citation.] '[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing—which means that the person guilty of attempted murder as an aider and abettor must intend to kill.' [Citation.]" (*People v. Nguyen* (2015) 61 Cal.4th 1015, 1054 (*Nguyen*).)

"'Evidence of a defendant's state of mind is almost inevitably circumstantial, but circumstantial evidence is as sufficient as direct evidence to support a conviction.' [Citation.]" (*Nguyen, supra*, 61 Cal.4th at p. 1055.) "[T]he act of purposefully firing a lethal weapon at another at close range gives rise to an inference of intent to kill . . . ." (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

"'Whether a person has aided and abetted in the commission of a crime ordinarily is a question of fact . . . . [¶] . . . [¶] Among the factors which may be considered in making the determination of aiding and abetting are: presence at the scene of the crime, companionship, and conduct before and after the offense.' [Citation.]" (*Nguyen, supra*, 61 Cal.4th at p. 1054; *In re Lynette G.* (1976) 54 Cal.App.3d 1087, 1095 [aiding and abetting factors include presence at the scene of a crime and flight with the perpetrator].)

Substantial evidence supports defendant's guilt as an aider and abettor in Cruz's attempted murder based on his presence at the scene; companionship with Gallardo, Riley, and Ponce; and

conduct before and after Cruz was shot. Rodriguez testified that defendant and three others approached Cruz outside Cruz's apartment. Defendant and his companions beat up Cruz, knocked him to the ground, and kicked him. Defendant then took Cruz's apartment keys and opened Cruz's apartment. Defendant's companions continued to beat Cruz and pulled him into his apartment. While inside the apartment, Cruz was shot twice—in the leg and head. After the shooting, defendant fled on foot with his three companions.

B. *Evidentiary Error*

Defendant contends the trial court violated his Sixth Amendment right to confrontation to the extent that it relied on testimonial hearsay from Cruz that had been admitted in defendant's trial pursuant to Evidence Code section 1370.[9] Defendant does not challenge the admission of Cruz's "initial excited utterances on October 6" or Rodriguez's testimony.

The trial court expressly stated that it would not consider the statements that officers had to "pry" from Cruz and would only consider Cruz's excited utterances to the officers on October 6. We assume the court did what it said it would do. (See *People v. Cain* (1995) 10 Cal.4th 1, 81, fn. omitted [the assumption that the trial court was not improperly influenced by material in a probation report was "amply supported by the record: before ruling the court explained its view 'the court should not take into consideration the contents of the probation report'; after ruling

---

[9] For purposes of our analysis, we will assume that the Sixth Amendment right to confrontation applies in a section 1172.6 proceeding.

13

the court repeated, 'I base my ruling entirely upon the evidence that was presented in the trial'"].)

Moreover, even if the trial court relied on any of Cruz's "pried" statements to the officers, any error was harmless under any standard because, as we discuss above, Rodriguez's unchallenged testimony alone was substantial evidence to support the court's denial of defendant's resentencing petition. (See *People v. Myles* (2021) 69 Cal.App.5th 688, 706 [the *People v. Watson* (1956) 46 Cal.2d 818, 836 harmless error standard applies to evidentiary errors at section 1172.6 hearings]; *Livingston, supra*, 53 Cal.4th at p. 1159 [the erroneous admission of testimonial hearsay in violation of the Confrontation clause is subject to federal harmless-error analysis under *Chapman v. California* (1967) 386 U.S. 18, 24].)

## IV. DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

KIM, J.

We concur:

MOOR, Acting P. J.

LEE, J.*

---

\* Judge of the San Bernardino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.