Filed 5/21/21  P. v. Hagelbarger CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074826 |
| v. | (Super.Ct.No. 16CR040018) |
| DOREN GARY HAGELBARGER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Michael A. Camber, Judge.  Affirmed.

Barbara A. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Robin Urbanski and Donald W. Ostertag, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant and appellant Doren Gary Hagelbarger repeatedly molested a close friend's daughter, beginning in 2005, when she was five years old until she was 15 years old. After two hours of deliberation, a jury found defendant guilty of four counts of oral copulation or sexual penetration with a child 10 years of age or younger (Pen. Code,[1] § 288.7, subd. (b); counts 1, 2, 5, & 6); two counts of committing a lewd act upon a child 14 years of age or younger (§ 288, subd. (a); counts 3 & 7); and one count of continuous sexual abuse of a child (§ 288.5, subd. (a); count 4). As to all counts, the jury found true that defendant had previously been convicted of forcible lewd acts on a child (§ 288, subd. (b)(1)) on June 17, 1999, that qualified as a prior serious or violent felony strike conviction (§§ 667 subds. (b)-(i), 1170.12, subds. (a)-(d)) and prior serious felony (§ 667, subd. (a)(1)). The trial court sentenced defendant to a total term of 200 years to life in state prison.

On appeal, defendant contends there is insufficient evidence to support the jury's verdicts on all seven counts. We conclude there was sufficient evidence presented for a reasonable jury to find defendant guilty beyond a reasonable doubt as to each of the counts. Consequently, we affirm the judgment.

---

[1] All future statutory references are to the Penal Code unless otherwise stated.

## FACTUAL AND PROCEDURAL HISTORY

A.    CURRENT OFFENSES

C.J. was born in July 2000 and was 19 years old at the time of trial. C.J.'s mother met defendant in 2003 when they worked together. C.J. was two or three years old at the time and thought of defendant like an uncle.

Defendant and C.J.'s mother started a dating relationship around 2004. The relationship lasted less than a year but C.J.'s mother and defendant remained close friends. Defendant frequently visited C.J.'s house, often spending the night and staying for extended periods of time. At one point, defendant moved into the house and lived there for about a year. After C.J.'s mother got back together with C.J.'s father, defendant continued to visit C.J.'s home and spend the night. C.J.'s mother was aware defendant had previously been convicted of child molestation. She, however, trusted defendant and left him alone with C.J.

Defendant began molesting C.J. when she "was about five" years old at C.J.'s home in Corona, mostly while her mother and older brother were not at home. Defendant resided in that Corona home for two years and had his own bedroom. In the beginning, defendant "smack[ed]" C.J.'s buttocks, placed her on his lap, or excessively touched her. However, soon defendant began to watch C.J. take showers and showed her pornographic videos and magazines. Defendant would "make a game" out of the pornography, forcing C.J. to engage in the sexual acts depicted in the pornographic magazines or videos. Defendant made C.J. orally copulate him about three times a week until he ejaculated.

3

He also orally copulated C.J. about three times a week, inserted his fingers into her vagina approximately five times a week, and made her stroke his exposed penis to ejaculation about three to five times a week. Defendant also attempted to insert his penis into C.J.'s vagina, causing her to cry out in pain, multiple times twice a week when she was six or seven years old. Since penetration was not possible, defendant instead rubbed his penis on C.J.'s outer vagina. To make her comply with his sexual requests, defendant often bribed C.J. with material goods her mother could not afford.

When C.J. cried or said "no," defendant became "very angry" and "hurt" her. On one occasion, when she was between five and seven years old, living in the Corona house, C.J. said "no" and defendant "got very angry and [] threw [her] across the room on the bed and yelled [and] screamed." For a couple years thereafter, C.J. was "too afraid to say no again" or tell anyone what defendant was doing to her as she was scared defendant would hurt her. Defendant also told C.J. not to tell anyone what he was doing, including her mother, because people would not understand their "kind of love."

When C.J. was seven to eight years old, the family moved into a two-bedroom apartment in Corona. Defendant visited the apartment frequently and often spent the night. Defendant's sexual abuse of C.J. continued while the family lived in the apartment. Similar to previously, C.J. explained the specifics of the sexual abuse perpetrated by defendant, noting the occurrences were about two to three times a week and every time when defendant drove C.J. to school.

4

At some point, the family moved into a house owned by C.J.'s mother's friend in Apple Valley when C.J. was finishing the third grade. The family stayed in the home for about two years. During this time, defendant's sexual abuse of C.J. stopped or significantly diminished because C.J.'s mother's friend would not allow defendant to visit inside the home or stay over.

When C.J. was 10 years old, she and her parents, brother, sister, and her nephew moved into a home in Apple Valley on Hurons. Defendant visited this home and often spent the nights on weekends. Defendant's sexual abuse of C.J. continued while the family lived in this home. C.J. recalled the specifics of some of the abuse, noting the occurrences were a lot less, about twice a month, due to more people living in this home.

The family subsequently moved into another home in Apple Valley on Pawnee when C.J. was around 11 or 12 years old. Defendant's sexual abuse of C.J. continued at this home for about four years until she was 15 years old. C.J. explained defendant had sexually abused her in the same manner as previously around 20 to 30 times in total while living in this home. Due to the abuse, C.J. became anxious, had emotional outbursts, and began cutting herself.

C.J. eventually disclosed the sexual abuse to her parents in August 2016, a day after she had turned 16, following an altercation with defendant. At first, C.J.'s mother did not believe her but when she described defendant's abnormal penis, C.J.'s mother was certain of the allegations and told C.J.'s father to call the police. C.J. described defendant's penis as being "unusual" because "[i]t doesn't have a head on it. It's like two

balls connected on top." C.J.'s mother was familiar with defendant's penis from their prior dating relationship. She thus knew that his penis had been "damaged from an injury" in a "work incident" where it was "cut in two and he has two heads."

Law enforcement arrived shortly and began their investigation. When officers contacted defendant at his house, he told them he was "expecting" them. Officers subsequently took defendant into custody and, following a search warrant, took photographs of defendant's naked body, including his penis. A photograph of defendant's penis was admitted into evidence and shown to the jury at the time of trial.

A forensic psychologist testified about child sexual abuse accommodation syndrome. She explained that children victimized by sexual abuse often exhibit this syndrome, characterized by secrecy, helplessness, entrapment and accommodation, delayed or unconvincing disclosure, and retraction or recantation. In pertinent part, she described how children do not necessarily disclose child abuse right away, that sometimes they lump multiple incidents together, and that they commonly forget specific details of the abuse.

### B. PAST OFFENSES OF SEXUAL ABUSE

On June 17, 1999, defendant pleaded guilty to committing lewd acts on a child with force in violation section 288, subdivision (b)(1), and was sentenced to three years in state prison. Defendant's section 969b packet relating to that case was admitted into evidence. Defendant admitted to C.J. on various occasions that he had molested several other young girls, including a neighborhood girl and niece-in-law, in the past.

6

## DISCUSSION

Defendant contends there is insufficient evidence to support the jury's verdict on all seven counts of sexual abuse because the convictions were "solely based upon the victim's unverifiable testimony, which was inconsistent as to the time periods, frequency, and details of the various incidents, and differed from the version of events she related to police." We conclude there is sufficient evidence to support all counts.

In reviewing the sufficiency of the evidence to support a conviction, appellate courts review the record in the light most favorable to the judgment to determine if there is reasonable and credible evidence from which any rational jury could have concluded the defendant was guilty beyond a reasonable doubt. (*People v. Johnson* (1980) 26 Cal.3d 557, 578; *People v. Hillhouse* (2002) 27 Cal.4th 469, 496; *People v. Campbell* (2020) 51 Cal.App.5th 463, 483-484.) We also " 'presume " 'in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence.' " ' " (*People v. Thompson* (2010) 49 Cal.4th 79, 113.) The test on appeal is not whether there is evidence to support an inference of innocence, but whether there is substantial evidence to support the verdict. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

A defendant challenging the sufficiency of the evidence bears an "enormous burden." (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330.) "We do not reweigh the evidence, resolve conflicts in the evidence, or reevaluate the credibility of witnesses." (*People v. Pre* (2004) 117 Cal.App.4th 413, 421.) The credibility of witnesses and the weight to be accorded to the evidence are matters exclusively within the province of the

trier of fact. (Evid. Code, § 312.) We simply consider whether " ' "any rational trier of fact could have found the essential elements of [the charged offenses] beyond a reasonable doubt." ' [Citations.]" (*People v. Rich* (1988) 45 Cal.3d 1036, 1081, italics omitted.) Unless it is clearly shown that "on no hypothesis whatever is there sufficient substantial evidence to support the verdict[,]" the conviction will not be reversed. (*People v. Hicks* (1982) 128 Cal.App.3d 423, 429.)

It is well settled that in cases charging child molestation over a period of time, generic testimony may suffice to support a conviction. (*People v. Jones* (1990) 51 Cal.3d 294, 314 (*Jones*).) As our Supreme Court stated in *Jones*, "[i]t must be remembered that even generic testimony (e.g., an act of intercourse 'once a month for three years') outlines a series of specific, albeit undifferentiated, incidents, each of which amounts to a separate offense, and each of which could support a separate criminal sanction." (*Id.* at p. 314, italics omitted.) Generally, such generic testimony is adequate to support a conviction where the victim describes (1) the type of acts committed with sufficient specificity to assure the unlawful conduct occurred and to differentiate between the various types of proscribed conduct; (2) the number of acts committed with sufficient certainty to support each of the counts alleged; and (3) the general time period in which the acts occurred to assure they were committed within the applicable limitation period. (*Id.* at pp. 315-316.) The court referred to this as the "minimum quantum of proof." (*Id.* at p. 314.) "Additional details regarding the time, place or circumstance of the various

8

assaults may assist in assessing the credibility or substantiality of the victim's testimony, but are not essential to sustain a conviction." (*Id*. at p. 316.)

In *Jones*, the victim testified to repeated molestations involving oral copulation once or twice per month over (roughly) a two-year period of time. (*Jones*, *supra*, 51 Cal.3d at p. 302.) The victim recalled being molested in five different locations, including four to six times on camping trips, and eight to 10 times in the bathroom or shower, but the victim could not recall exact dates or provide additional details to differentiate the individual acts. (*Ibid*.) The court concluded that the victim's generic testimony was " 'certainly sufficient if believed to enable the jury to conclude [the victim] had been molested at least once during [each of the four time periods in question].' " (*Id*. at pp. 322-323.)

Here, defendant was charged with, and convicted of, four counts of oral copulation or sexual penetration with a child 10 years of age or younger (§ 288.7, subd. (b); counts 1, 2, 5, & 6); two counts of committing a lewd act upon a child 14 years of age or younger (§ 288, subd. (a); counts 3 & 7); and one count of continuous sexual abuse of a child (§ 288.5, subd. (a); count 4). Section 288.7, subdivision (b), punishes "[a]ny person 18 years of age or older who engages in oral copulation or sexual penetration, as defined in Section 289, with a child who is 10 years of age or younger." (§ 288.7, subd. (b).) Section 288, subdivision (a), punishes "a person who willfully and lewdly commits any lewd or lascivious act . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or

9

gratifying the lust, passions, or sexual desires of that person or the child . . . ."  (§ 288, subd. (a).)  And section 288.5, subdivision (a), punishes "[a]ny person who either resides in the same home with the minor child or has recurring access to the child, who over a period of time, not less than three months in duration, engages in three or more acts of substantial sexual conduct with a child under the age of 14 years at the time of the commission of the offense . . . or three or more acts of lewd or lascivious conduct, as defined in Section 288, with a child under the age of 14 years at the time of the commission of the offense . . . ."  (§ 288.5, subd. (a).)

Applying the reasoning of *Jones* to the facts of this case, we conclude that the testimony of C.J. as outlined above, comprising a mixture of generalized accounts of repeated molestations and specific acts of sexual abuse, was sufficient to support the convictions for all counts.  For each count, C.J. described the kind of acts committed, the number of acts committed with sufficient certainty to differentiate and support each count alleged, and the general time period in which the charged acts occurred to assure they were committed within the applicable limitations period.  She also testified the sexual abuse began when she was five years old, beginning in 2005, and continued until she was 15 years old.  She further explained the locations of where the abuse occurred with specificity.

In addition, the jury was instructed that " '[t]he People have presented evidence of more than one act to prove that the defendant guilty [*sic*] of these offenses. [¶] You must not find the defendant guilty unless: [¶] Number 1. You all agree that the People have proved that the defendant committed at least one of these acts and you all agree on which act he committed for each offense; Or [¶] You all agree that the People have proved that the defendant committed all the acts alleged to have occurred during this time period and have proved that the defendant committed at least the number of offenses charged.' " The jury was also instructed that " '[t]he testimony of only one witness can prove any fact. Before you conclude that the testimony of one witness proves a fact, you should carefully review all the evidence.' " The jury deliberated for about two hours before convicting defendant of all counts.

Defendant argues there is insufficient evidence to support the convictions due to inconsistencies in C.J.'s testimony regarding the nature of the allegations, her failure to inform the police about watching pornography, and conflicts between C.J.'s and her parents' testimonies concerning how long defendant spent the night in the family home. Defendant believes the inconsistencies and conflicts do not support the jury's verdicts and were based on a "he-said, she-said" situation possibly due to C.J.'s altercation with defendant in August 2016. We disagree.

Inconsistencies in the testimony of a given witness do not render that testimony insufficient to support the verdict. (*People v. Maury* (2003) 30 Cal.4th 342, 403 (*Maury*).) "Resolution of conflicts and inconsistencies in the testimony [of witnesses] is

11

the exclusive province of the trier of fact." (*People v. Young* (2005) 34 Cal.4th 1149, 1181 (*Young*); *People v. Watts* (1999) 76 Cal.App.4th 1250, 1258-1259 (*Watts*).)  " 'An appellate court cannot substitute its judgment for that of the [trier of fact] unless the testimony . . . "is so inherently improbable and impossible of belief as in effect to constitute no evidence at all." [Citations.]' " (*People v. Maxwell* (1979) 94 Cal.App.3d 562, 577 (*Maxwell*).)  " 'Such cases are rare indeed.  [Citation.]'  [Citation.]" (*People v. Ennis* (2010) 190 Cal.App.4th 721, 729 (*Ennis*).)

Absent exceptional circumstances, the "testimony of a single witness is sufficient to support a conviction." (*Young*, *supra*, 34 Cal.4th p. 1181.)  The fact that there was a potential source of impeachment does not render the testimony insufficient to support the verdict.  The jury may give credence to a witness whose testimony is contradictory or inconsistent or false in part.  (*People v. Fleming* (1961) 191 Cal.App.2d 163, 170; *Maxwell*, *supra*, 94 Cal.App.3d at p. 577.)  It is the role of the jury, not this court, to resolve any discrepancies in the evidence and decide which statements are true and which are not.  (*Ennis*, *supra*, 190 Cal.App.4th at p. 729; accord, *Watts*, *supra*, 76 Cal.App.4th at pp. 1258-1259.)

Although there are inconsistencies in the testimony of C.J. and her parents in this case, those inconsistencies do not demonstrate that the testimony was so inherently unreliable that no rational trier of fact could rely on the testimony to support the verdicts. Indeed, most of the inconsistencies involved relatively minor factual details, such as how long defendant stayed in the family home, at what age C.J. was when some of the abuse

stopped, and C.J.'s failure to inform the police about watching pornography with defendant.

Defense counsel described the various inconsistencies in C.J.'s testimony in her closing argument to the jury, arguing, as defendant does here, that the inconsistencies rendered that testimony unworthy of belief. But the jury, having heard and observed all the evidence, including the expert testimony on how child sexual abuse is disclosed, disagreed. Defendant's claim on appeal amounts to little more than asking us to reweigh the evidence, which we cannot do. (*Maury*, *supra*, 30 Cal.4th at p. 403.)

Where there were inconsistencies between a witness's trial testimony and earlier statements, the jury reasonably could have concluded such inconsistencies were unimportant, were the result of honest mistakes, or were adequately explained at trial. Where there were inconsistencies or conflicts within a witness's testimony at trial or between the testimony of different witnesses at trial, it was within the province of the jury to determine what testimony to believe. There is nothing physically impossible or inherently incredible in the trial testimony of C.J. and the other witnesses. Accordingly, we conclude C.J.'s testimony provides ample evidentiary support for the verdicts and reject defendant's claim the convictions are not supported by substantial evidence.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____

J.

We concur:


RAMIREZ _____

      P. J.


SLOUGH _____

      J.